## L. SCHOONOVER v. J. F. PETCINA, COUNTY TREASURER OF JONES COUNTY, Appellant.

**Taxation:** OMITTED PROPERTY: NOTICE OF ASSESSMENT. Notice to a taxpayer of the proposed assessment of omitted property must be given within five years from the date at which the same should have been assessed, or the same will be barred by the statute.

**Assessment of omitted property:** ISSUES ON- APPEAL. Where an assessment of omitted property has been made and an appeal taken, it becomes the duty of the court to inquire into and determine *de novo* from all the evidence the liability for the asssessment; and an unverified statement of omitted taxes prepared by agents of the county, employed to discover the same and the assessment thereof, does not make a *prima facie* case for the county requiring the taxpayer to show that specific items were erroneously listed.

**Objection to assessment:** SUFFICIENCY. No formal pleadings are required in a proceeding to assess omitted property, and a tax-payer's general objection to an assessment, made before the treasurer, that the items of moneys and credits proposed to be assessed were not items for which he was liable for the years specified, and that his indebtedness for those years which he was entitled to set off against the same was equal to the amount of his moneys and credits, was sufficiently specific to raise the issue on appeal.

**Appeal from assessment:** ISSUES. The issue on appeal from an assessment of omitted property is the correctness of the action of the taxing officer and the evidence must be confined to that issue, but the taxpayer is entitled to have every question determined anew which such officer was called upon to determine.

**Taxation of bank securities.** Where the owner of a private banking business sold and transferred the business and assets to a national bank of which he became a stockholder and its president, the notes and other evidences of indebtedness so transferred became the property of the national bank from the time of the transfer, and was no longer taxable to the assignor.

**Same:** ESTOPPEL. Where the president of a national bank loaned bank money on real estate security in his own name, thereafter assigning the notes only to the bank, the mortgages securing the same were not taxable to such president as moneys and credits; nor was he

estopped from claiming that the same were bank property because the transaction amounted to an evasion of the federal banking law.

**Taxation of contracts:** WHAT CONSTITUTES A CREDIT. Where one purchases land, paying therefor and taking title in his own name, and in accordance with a previous understanding enters into a contract of lease for a rental based upon an interest rate on his investment, giving to the lessee an option to purchase the same within a specified time upon payment of its cost to the lessor, the transaction does not amount to a contract giving rise to any actual indebtedness which is assessable as a credit.

**Estoppel:** SHOWING OF INDEBTEDNESS. Where the assessment rolls inform a taxpayer that he need only list such liabilities as he desires to offset against his moneys and credits, he is not estopped in a proceeding to assess omitted property, from making an itemized statement of his indebtedness for each year, for the purpose of showing a larger amount than contained in the assessment rolls.

**Deduction of debts:** WHAT CONSTITUTES A DEBT. An obligation which a taxpayer may deduct from the amount of his moneys and credits under Code, section 1311, must be an actual indebtedness, and notes signed simply as an indorser which were reported to the comptroller of currency by such indorser, do not constitute such indebtedness.

**Reply:** ARGUMENT: COSTS. Where the appellee had the opening argument, and the appellant in his reply brief failed to discuss any matters not sufficiently presented in appellee's opening argument, to enable a full response in appellant's main argument, the costs of the reply should be taxed to him.

*Appeal from Jones District Court.*— HON. W. G. THOMPSON, Judge.

WEDNESDAY, JULY 13, 1904.

PLAINTIFF was assessed by the county treasurer under chapter 50, page 33, Acts Twenty-eighth General Assembly, on moneys and credits claimed to have been omitted from assessment for preceding years. On appeal to the district court this assessment was set aside, and the defendant appeals to this court.— *Reversed.*

*E. E. Reed,* County Attorney, and *Baily & Stipp,* for appellant.

*F. 'O. Ellison* and *Cash & Rhinehart,* for appellee.

McCLAIN, J.— Notice was given to plaintiff by the treasurer on August 22, 1902, that moneys and credits which should have been assessed to him for the years 1897,

**1. OMITTED PROPERTY: notice of assessment.** 1898, 1899, 1900, and 1901 had been either withheld, overlooked, or omitted from assessment, and had not been listed or assessed for said years. As the assessment for 1897 should have been made before April 1st, the five-year limitation had run with reference to any omissions for that year. *Siberling v. Cropper,* 119 Iowa, 420 ; *Thornburg v. Cardell,* 123 Iowa, 313.

The notice given by the treasurer advised plaintiff only as to the aggregate sums of moneys and credits which it was claimed had been withheld, overlooked, or omitted for the respective years, and required him to appear on the third day of September at the office of the treasurer, to make objections to the listing and assessment of said property for taxation for said years, respectively. The amounts of moneys and credits specified for the respective years as omitted or overlooked were, however, those stated in a report made to the treasurer by the National Accounting Company, which showed in condensed and tabulated form a large number of items, designated by date, amount, volume and page of the records, and an abbreviated description. At the end of this tabulated statement, which occupies nine pages of printed record, was a summary showing the total amounts for the respective years, and these were the amounts specified by the treasurer in the notice.

The first claim of appellant which we need consider is that this tabulated statement and the action of the treasurer in assessing the amount specified therein for the respective

**2. ASSESSMENT OF OMITTED PROPERTY: issues on appeal.** years made out a *prima facie* case against the plaintiff, and that he should have been relieved by the district court from such assessment only in so far as he introduced evidence explaining specific items,

and showing that they were not properly included in the list of his moneys and credits. But this is not the construction which has been put upon statutory provisions allowing an appeal to the district court with reference to an assessment. On such appeal the court is to hear the matter in equity, and determine anew all questions arising before the taxing officer or tribunal which relate to the liability of the property to assessment or the amount thereof. See Code, section 1373. The matter stood before the district court in the same situation as before the treasurer, and it was for the court to determine whether or not the plaintiff was liable to assessment for the moneys and credits with which the treasurer had assessed him. It is to be noticed that the treasurer did not act upon the return made by a sworn officer, but upon the return of a company employed by the county for the purpose of discovering moneys and credits which had been overlooked, and certainly such a report cannot be regarded as a public record, which must be presumed to be correct. It is not pretended that the treasurer made any independent investigation or finding as to the correctness of the report, and we think it was for the district court to determine on all the evidence whether any moneys and credits had been omitted in previous assessments, and the total amount of such moneys and credits thus overlooked or omitted on which the plaintiff should be required to pay taxes. See *Grimes v. Burlington,* 74 Iowa, 125; *Lyons v. Board of Equalization,* 102 Iowa, 1; *City Council v. National Loan, etc., Co.,* 122 Iowa, 629.

It has been held in *Frost v. Board of Review,* 114 Iowa, 103, that the court cannot be converted into an original taxing tribunal, but can only review an assessment made. What was there said was only said, however, with reference to a case in which no assessment was brought before the court for review. Here we have an assessment made by the treasurer, and evidence received as to its correctness, and we think the court was required, under the statute, to determine the question whether the assessment was such as the treasurer

ought to have made in view of the evidence before the court, and to fix the amount of moneys and credits for which the plaintiff should have been assessed by the treasurer.

It is further contended for appellant that no objections to the assessment by the treasurer could be considered on an appeal to the district court which were not specifically presented on the hearing before the treasurer, and that the objections made before the treasurer by plaintiff were too indefinite and uncertain to raise any question for his consideration. But no formal pleadings are required in such a case, and we think the allegation that the items of moneys and credits scheduled and proposed to be listed and assessed to him were not items for which he was liable to assessment for the years specified, and that during those years his indebtedness which should be deducted from his moneys and credits was sufficient in amount to offset the total amount of moneys and credits for which he was subject to assessment for those years, was a sufficiently specific objection to raise an issue, and that the issue thus raised could be tried on appeal to the district court. The requirement of chapter 50, page 33, Acts Twenty-eighth General Assembly, is that the person to whom it is proposed to list and assess omitted property under the provisions of that act shall have notice " of the time and place where objection to such proposed listing and assessment may be made "; and when such person has made objection, and has nevertheless been assessed, he is authorized to appeal to the district court, and have the correctness of the assessment determined on evidence presented. The treasurer, when acting with reference to the assessment of property, is not a judicial officer, and the ordinary rules of pleading and evidence applicable to the trial of a case in court need not, and, indeed, could not be followed in the proceeding before him. The plaintiff was entitled on his appeal to have determined every question which the treasurer was called upon to determine with reference to the liability of the plaintiff to assessment

3. OBJECTION TO ASSESSMENT: sufficiency.

on moneys and credits for the years specified.  *Burns v. McNally,* 90 Iowa, 436.

The issue before the district court on such appeal is as to the correctness of the action of the assessing officer or tribunal, and the evidence must be confined to that question.

4. APPEAL FROM ASSESSMENT: issues.

But when the evidence is submitted it is for the court to determine on the whole evidence whether the officer or tribunal has acted properly, and if, as to any items included by the assessment officer or tribunal, it appears that the taxpayer was not liable to assessment, then the district court should reduce the assessment accordingly; and if it finds that under the evidence no assessment should have been made, it should set aside *in toto* the assessment complained of.  It appears that plaintiff submitted to the district court a tabulated list of his moneys and credits subject to taxation for the years in controversy, and of his liabilities, which he claims should be set off as against such moneys and credits; and this list, as he testified, was correct.  The court was justified in considering this testimony in connection with the list of moneys and credits returned by the National Accounting Company, and such evidence as was introduced as to the correctness of specific items in either of the two lists, and to determine from all the evidence before it whether plaintiff was subject to assessment for any moneys and credits for the respective years for which he had not been properly assessed.

Counsel on either side have grouped the controverted items into classes, and we shall proceed to consider the liability of plaintiff to assessment for each of these classes of items.  It appears that in 1897 plaintiff, who

5. TAXATION OF BANK SECURITIES.

had prior to that time been engaged in a private banking business, sold this business to a corporation, then organized under the national banking law, known as the Anamosa National Bank, in which he subsequently acquired eighty-five shares of stock, and of which he became president.  He transferred to the new bank the assets

of his private bank, including the notes and other evidences of indebtedness held by him in connection with such banking business, and such assets became from that time on assets of the national bank, and no longer taxable as moneys and credits of the plaintiff. It is clear that any items of moneys and credits included among the assets thus transferred were improperly listed for taxation to plaintiff.

After the organization of the Anamosa National Bank, which, under the national banking law, was not authorized to loan money on real estate securities, plaintiff, as its president, was in the habit of taking notes in his own

6. SAME:
estoppel.

name, secured by real estate mortgages, for money loaned, and transferring the notes, with his indorsement, to the bank, holding the mortgages in his own name; and it appears that with his consent other officers of the bank acted for him in similar transactions, so that the bank held a large amount of notes taken in the name of the plaintiff and indorsed to the bank, secured in this manner, so far as plaintiff was concerned, by real estate mortgages. These mortgages were included in the list of items of moneys and credits assessed by the treasurer to the plaintiff, and it is argued for appellant that they were properly so included, for the reason that plaintiff is estopped from claiming that transactions which were in reality an evasion of the prohibition of the federal banking law as to loaning money on real estate security, in which he had acquiesced as an officer of the bank, were so far valid as to relieve him from liability for taxation on the loans thus made. But it has been held by the Supreme Court of the United States that national banks may enforce such notes, and even avail themselves of the real estate securities given to the indorsers, and that it is only for the United States, and not for the debtor, to say that such a transaction is fraudulent, and in violation of law. *National Bank v. Matthews,* 98 U. S. 621 (25 L. Ed. 188); *National Bank v. Whitney,* 103 U. S. 99 (26 L. Ed. 443);

*Fortier v. New Orleans Bank,* 112 U. S. 439 (5 Sup. Ct. 234, 28 L. Ed. 764).

It is not claimed that the notes thus transferred by plaintiff to the bank were not treated as a part of its assets in the payment of its taxes, and we see no reason why the plaintiff may not now properly contend that these notes were the property of the bank, and not his property. In fact, we see nothing in the national banking law to prevent the sale to a national bank of a note secured by a mortgage on real estate. Even if the bank were forbidden to enforce the mortgage, the note, as distinct from the mortgage, would be a negotiable instrument, subject to transfer by indorsement. By such a transfer the indorser would incur a qualified liability to the bank, but such liability would be collateral only, and not direct. Even though plaintiff, by means of such transfers, became an indorser to the extent of more than one-tenth of the capital stock of the bank, we hardly think that he thereby became a borrower to that extent, in violation of the provision of the federal banking act prohibiting the loan to any one officer of sums greater than one-tenth of the capital stock. But, even if he is to be treated as a borrower with reference to the sums of the notes thus transferred, he could not himself set up the violation of this prohibition as a defense, *Gold Mining Co. v. National Bank,* 96 U. S. 640 (24 L. Ed. 648), and we do not see how the statutory prohibition affects the question as to his liability to taxation for the notes thus transferred, and which the bank became entitled to enforce, not only as against the makers, but also as against plaintiff as indorser. In short, these notes became for all practical purposes the property of the bank, and plaintiff's liability thereon was collateral only, and we do not see how plaintiff can properly be assessed for such notes as moneys and credits.

Certain items listed by the National Accounting Company as " land contracts " refer, as it appears, to certain warranty deeds executed to plaintiff, which, on the face of

them, do not indicate any indebtedness to plaintiff what-

7. TAXATION OF CONTRACTS: what consti- tutes a credit.
ever on the part of any person; certainly not on the part of the person whose name is signed to the deed. But it was shown on behalf of defendant that in some cases plaintiff, at the request of persons desiring to buy particular tracts of land, had taken conveyances of the land from the owner to himself, and then executed leases to the persons desiring to purchase, fixing the rental price of the premises at an amount determined by some agreed rate of interest on the amount of money invested by him, with provisions in the leases that the tenants might become purchaser within periods specified in such leases upon payment of stipulated amounts, which were in fact the amounts invested by plaintiff in the premises.

It is claimed by appellant that these instruments were in fact mortgages to plaintiff of lands really belonging to the persons for whom they were thus purchased, and that these transactions, therefore, were resorted to for the purpose of evading taxation. It is apparent, however, that before the plaintiff can be taxed for an indebtedness as involved in such a transaction, it must appear that there was in reality a debt. The deeds and leases do not show any indebtedness from the tenants to the plaintiff, but only a privilege of purchase which the tenants might avail themselves of if they should see fit at any time during the terms of their leases. It appears from the evidence that in some instances the tenants had availed themselves of these options and become purchasers of the lands covered by the leases from the plaintiff and received deeds therefor. In other instances it appears from the testimony of the tenants themselves that the transaction in each case was just what it purported to be on its face — a purchase of land by plaintiff, with the expectation of selling such land to the person at whose request the purchase was made, with an agreement for rent in the meantime, which should be equivalent in amount to interest on the investment. If plaintiff had sufficient confidence in the

value of the land purchased and in the probability of the tenant becoming a purchaser to enter into such an arrangement, we see no reason why he should not do so. Nor is there anything in such a transaction so unbusinesslike or unreasonable as to arouse suspicion. If the tenant should not exercise his option, plaintiff would still be the owner of the land, and could dispose of it to some other purchaser, and he would be entirely protected from loss, unless, of course, the land should depreciate in value. Apparently that is the only risk which he took, and it was a legitimate risk in connection with the ownership of the property. We find no evidence that in a single instance there was any actual indebtedness in connection with these land transactions which could be assessed to plaintiff as a credit which were not so reported in his list furnished to the court in connection with his testimony. As it does not appear, therefore, that in any of the cases investigated by the court there was such a contract for the sale of land as to give rise to an indebtedness to plaintiff, we reach the conclusion that the items entered by the National Accounting Company as land contracts were not items which should have been taken into account by the lower court in determining the amount of plaintiff's moneys and credits. The case differs in this respect from *Perrine v. Jacobs,* 64 Iowa, 79, and *Meyer v. Dubuque County,* 49 Iowa, 193.

It appears in two instances that the tenant had before the purchase of the land by plaintiff made part payment to the former owner, but in these cases the tenant allowed the plaintiff, on paying the balance of the purchase price, to take a warranty deed for the premises, accepting a lease for five years, with rent fixed with reference to interest on the amount of money advanced by plaintiff, and with an option to purchase on payment of that amount. So far as we can see, the tenants in these cases would have lost the amount of money which they had paid the previous owner had they failed to avail themselves of their options within the terms fixed in their leases. But if they saw fit to put themselves

in this position, depending on their ability to exercise the option given them, we cannot see that the transaction can be regarded as an evasion of taxation.    The land was, of course, taxed at its full value, and there was no indebtedness to the plaintiff which can properly be listed as a part of his moneys and credits.

The classes of cases which have been discussed include the larger part of the items which were by the National Accounting Company reported as moneys and credits omitted from taxation.    There are, however, some other items included in the list, and not reported by the plaintiff to the court as credits, which are not thus explained; but plaintiff, as a witness, went over these items one by one, and, so far as we can discover, made reasonable explanation of all of them, showing that they were not properly listed as against him as credits.    His testimony as to these items is in no way contradicted, and we reach the conclusion that he was not subject to taxation for any moneys and credits not included in the list furnished by him to the court, save that to the amounts of credits reported by him for each year should be added the value of his bank stock.    This bank stock had been included in the regular assessments, and he had paid taxes on the amount of such stock and such other credits as were assessed to him in those years, after deducting the amount of his claimed indebtedness.    For the purposes of the present computation, it will be more convenient, however, to add to the moneys and credits reported by him to the court the value of his bank stock as found by the assessor for each year, and thus arrive at the total amount of moneys and credits for which he should have been taxed for each year.    This will be more convenient for the reason that his showing as to his indebtedness for each of these years is different from that made to the assessor in connection with his regular assessment.

We now reach the question of the indebtedness which plaintiff is entitled to set off for each year as against his mon-

eys and credits. Counsel for appellant contend that he is con-
cluded by his report of indebtedness for each
year to the assessor, and cannot now claim a
larger amount of indebtedness for the purpose
of offsetting the larger amount of moneys and credits now
shown.   But it does not appear that plaintiff made any item-
ized statement of indebtedness for these respective years.
He was notified on the assessment rolls that " the party
assessed need list only such of his liabilities as he may desire
to have subtracted from his moneys and credits," and we
think that he is not now estopped from making an itemized
statement of indebtedness for each year, and thereby showing
a larger amount of indebtedness than that mentioned on the
assessment rolls.

  In his report to the court, which, it must be understood,
was made under oath, he itemized his indebtedness for each
year, and there is no evidence that any of the items given
are not true and correct statements of liabilities
which he is entitled to offset against moneys
and credits, save that for each year he includes
liability to the Anamosa National Bank on notes.   So far as
plaintiff shows, this liability was as indorser only on notes
transferred from his private banking business to the national
bank, or taken in his own name and transferred to the bank.
As the reports of the bank to the Comptroller of the Cur-
rency, which plaintiff signed, certify that the bank owned no
notes or securities in any of these years which were not good,
we must assume that plaintiff's liability as indorser was not
a real liability within the provisions of Code, section 1311,
which authorizes the taxpayer to deduct from the actual value
of his moneys and credits the gross amounts of all debts in
good faith owing by him, with the limitation that " no ac-
knowledgment of indebtedness not founded on actual consid-
eration, and no such acknowledgment made for the purpose
of being so deducted, shall be considered a debt within the
intent of this section, and so much only of any liability of

8. ESTOPPEL: showing of indebtedness.

9. DEDUCTION OF DEBTS: what constitutes a debt.

such person as security for another shall be deducted as he believes he will be compelled to pay on account of the inability of the principal debtor." We are justified, therefore, in excluding from the list of plaintiff's liabilities any liability by reason of the indorsements on these notes.

Plaintiff also lists among his liabilities, for the purpose of offsetting the moneys and credits returned by the National Accounting Company, the moneys and credits on which he has already been taxed; but these items we exclude, as they will be deducted in another manner. Taking, then, the moneys and credits reported by the plaintiff to the court as the true amount of his moneys and credits not previously taxed, adding thereto his bank stock, which constituted substantially the moneys and credits on which he had already been taxed, and deducting from the totals for each year his indebtedness for that year, as shown by his report, excluding items already referred to, we find that plaintiff should have been taxed on moneys and credits as follows: For 1898, $10,710; for 1899, $28,836; for 1900, $11,647; for 1901, $27,443. He was in fact taxed for moneys and credits, after deducting liabilities, as follows: For 1898, $10,000; for 1899, $19,292; for 1900, $8,968; for 1901, $9,436. It appears, therefore, that the moneys and credits for which the lower court should have approved assessments against plaintiff were as follows: For 1898, $710; for 1899, $9,544; for 1900, $2,679; for 1901, $18,007.

A motion is submitted with the case to strike out appellant's argument on the ground that, as this is an equity case, the appellee, having filed the first argument, was entitled to close, and appellant's reply was filed without right under the rules, and it is asked that the costs of the reply be taxed to the appellant. On examination of the reply it appears that counsel have not discussed any matters which were not sufficiently presented in appellee's opening argument to enable them to respond fully in their main argument, and the costs of the reply

10. REPLY ARGUMENT: costs.

should therefore be taxed to the appellant. The other costs of this appeal will be taxed to appellee.

The case is remanded to the lower court, with direction that the amounts above found to be the assessable value of omitted moneys and credits of plaintiff be certified to the treasurer to be listed for taxation under the provisions of Code, section 1374, and Acts Twenty-eighth General Assembly, page 33, chapter 50.— *Reversed.*