M. M. HEAD et al., Appellants, v. BOARD OF REVIEW et al., Appellees.

**TAXATION:** National Bank Shares—Nature of—Deducting Federal
1 **Bonds.** Federal statutes (a) forbid the taxation of federal bonds, etc., yet (b) grant the power to tax shares of stock in national banks. (Sec. 5219 Rev. Stat. U. S.) But as shares of stock in such bank are items of property, separate and distinct from federal bonds or any other item of property owned by the bank, it follows that the state, in determining the value of such shares for the purpose of taxation, is under no obligation, under the statute forbidding the taxation of federal bonds, to deduct the value of federal bonds owned by the bank, even though such bonds do enhance the value of the shares.

**TAXATION:** National Bank Shares—Private Bankers—Deducting
2 **Federal Bonds and Stock "Otherwise Taxed"—Unlawful Discriminations.** The federal statute granting the power to tax shares of stock in national banks provides, "that the taxation shall not be at a greater rate than is assessed upon *other moneyed capital* in the hands of the individual citizens, etc." (Sec. 5219, Rev. Stat. U. S.) But the clause "other moneyed capital" means "other moneyed capital *which is taxable.*" Federal bonds are not taxable. It follows that Sec. 1321, Sup. Code, 1913, and the related sections, 1310, 1311, 1322 and 1322-1a, providing that in assessing the property of a private banker there shall be deducted from the value of his property (a) the value of federal bonds and (b) stock "otherwise taxed" owned by said private banker, while providing for no such deduction from the shares of stock of national, state, and savings banks and loan and trust companies, involve no discrimination against shareholders in national banks, and therefore no violation of said federal

statute.   An intention that government bonds shall be taxed
when declared by law not to be taxable, or that stocks shall be
twice taxed, is not imputable to any of our legislative bodies.

*Appeal from Greene District Court.*—HON. M. E. HUTCHISON,
Judge.

FRIDAY, MAY 14, 1915.

THE plaintiffs are owners of capital stock of the First
National Bank of the city of Jefferson, and notwithstanding
their objections, the several shares of said stock were assessed
in 1912 and objections to said assessment were overruled by
the board of review.  Alleging the foregoing facts, together
with grounds for the invalidity of Chapter 63 of the Acts of
the 34th General Assembly, they prayed for issuance of a writ
of certiorari.  The court so ordered, and the board of review,
together with officers comprising it, made return.  Thereupon
the parties stipulated the facts, and upon hearing the court
dismissed the petition and confirmed the assessment.  The
plaintiffs appeal.—*Affirmed.*

*Wilson & Albert,* for appellants.

*Church & McCully,* for appellees.

LADD, J.—The shares of capital stock of the First National
Bank of Jefferson were assessed to plaintiffs as owners and
such assessment confirmed by the local board of review.  The

1. TAXATION:
national bank
shares: na-
ture of: deduct-
ing federal
bonds.

regularity of the proceedings is not ques-
tioned, the sole contentions of appellants be-
ing that Chapter 63 of the 34th General
Assembly is (1) unconstitutional, and (2) in
conflict with the federal statutes relating to national banks.
The capital stock of the bank was $50,000.00, with undivided
profits amounting to $10,000.00, and it had real estate worth
$11,300.00 and owned U. S. bonds of the face value of $50,-
500.00.  The shares were assessed at $97.50 each.  In the

county were several private banks, a state bank, three savings banks and another national bank. Though the points are separately made, the appeal presents but a single question, and that is, whether the taxing laws of this state are a violation of Sec. 5219 of the statutes of the United States. The provisions of the Constitution invoked (Sec. 6 of Article 1 and Sec. 30 of Article 3) exact uniform laws and prohibit discrimination, and that is precisely the effect of the above section (5219), which reads as follows:

"Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the state within which the association is located; but the legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by non-residents of any state shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county or municipal taxes, to the same extent, according to its value, as other real property is taxed."

The particular contention is that the taxation of private banks, because of certain deductions from the assessed value thereof, results in a greater rate of taxation on national and other incorporated banks. That the point may clearly appear, we set out the portions of the statutes bearing thereon: Sec. 1310 of the Code Supplement, "All moneyed capital within the meaning of section fifty-two hundred nineteen of the revised statutes of the United States shall be listed and assessed against the owner thereof at his place of business, and if a corporation at its principal place of business, at the same

rate as state, savings, national bank and loan and trust company stock is taxed, in the same taxing district, and at the actual value of the moneyed capital so invested. The person or corporation using moneyed capital in competition with bank capital shall furnish the assessor upon demand a full and complete itemized sworn statement showing the amount of moneyed capital so used.''

Sec. 1311 of the Code Supplement: ''No deduction for debts shall be allowed from the shares of stock of any state, savings or national bank or loan and trust company, nor from moneyed capital used in competition with banks, within the meaning of section fifty-two hundred nineteen, of the revised statutes of the United States.''

Sec. 1321 of the Code Supplement: ''Private banks or bankers, or any persons other than corporations hereinafter specified, a part of whose business is the receiving of deposits subject to check, on certificates, receipts, or otherwise, or the selling of exchange, shall prepare and furnish to the assessor a sworn statement, showing the assets, aside from real estate, and liabilities of such bank or banker on January first of the current year, as follows:

''1. The amount of moneys, specifying separately the amount of moneys on hand or in transit, the funds· in the hands of other banks, bankers, brokers or other persons or corporations, and the amount of checks or other cash items not included in either of the preceding items:

''2. The actual value of credits, consisting of bills receivable owned by them, and other credits due or to become due;

''3. The amount of all deposits made with them by others, and also the amount of bills payable;

''4. The actual value of bonds and stocks of every kind and shares of capital stock or joint stock of other corporations or companies held as an investment, or in any way representing assets, and the specific kinds and description thereof exempt from taxation;

"5. All other property pertaining to said business, including real estate, which shall be specially listed and valued by the usual description thereof; the aggregate actual value of moneys and credits, after deducting therefrom the amount of deposits, and the aggregate actual value of bonds and stocks, after deducting the portion thereof otherwise taxed in this state, and also the other property pertaining to the business, shall be assessed as provided by section thirteen hundred and five of this chapter, not including real estate, which shall be listed and assessed as other real estate."

Sec. 1322 of the Code Supplement: "Shares of stock of national banks and state and savings banks, and loan and trust companies, located in this state, shall be assessed to the individual stockholders at the place where the bank or loan and trust company is located. At the time the assessment is made the officers of national banks and state and savings banks and loan and trust companies shall furnish the assessor with lists of all the stockholders and the number of shares owned by each, and the assessor shall list to each stockholder under the head of corporation stock the total value of such shares. To aid the assessor in fixing the value of such shares, the said corporation shall furnish him a verified statement of all the matter provided in section thirteen hundred twenty-one of the supplement to the code, 1907, which shall also show separately the amount of the capital stock and the surplus and undivided earnings, and the assessor from such statement shall fix the value of such stock based upon the capital, surplus, and undivided earnings. In arriving at the total value of the shares of stock of such corporations, the amount of their capital actually invested in real estate owned by them and in the shares of stock of corporations owning only the real estate (inclusive of leasehold interests, if any), on or in which the bank or trust company is located, shall be deducted from the real value of such shares, and such real estate shall be assessed as other real estate, and the property of such corporation shall not be otherwise assessed. A refusal to furnish the

assessor with the list of stockholders and the information required under this section shall be deemed a misdemeanor and any bank or officer thereof so refusing shall be punished by a fine not exceeding five hundred dollars.''

Sec. 1322-1a, Code Supplement: ''For the purpose of placing the taxation of bank and loan and trust company stock and moneyed capital as nearly as possible upon a taxable value relatively equal to the taxable value at which other property is now actually assessed throughout the state as compared with the actual value thereof, it is hereby provided that state, savings and national bank stock and loan and trust company stock and moneyed capital shall be assessed and taxed upon the taxable value of twenty per cent. of the actual value thereof, determined as herein provided, which twenty per cent. of the actual value shall be taken and considered as the taxable value and shall be taxed as other property in such taxing district.''

From these statutes it appears that, while the value of bonds (national or other) and stocks otherwise taxed in the state is to be deducted from the aggregate values of moneys and credits, less deposits, and the remainder, with other property pertaining to the business, assessed, no deduction of the kind are to be allowed in ascertaining the value of shares of stock in national and state, other than private banks. It is to be kept in mind that the shares as distinct items of property are to be assessed, and not the property of the corporation. Though the bank may pay the taxes, this is done not in its behalf but for the shareholders. Neither the corporation nor its property is assessed. This was first settled in *Van Allen v. Assessors,* 3 Wall. 573 (18 L. Ed. 229). There all the capital of the bank had been invested in non-taxable national securities, and yet, after great consideration, the court held that the shares of stock might be assessed under the laws of New York without taking into account the non-taxable character of the investment. Though some of the justices dissented, the court has since adhered to this decision. *People v.*

*Commissioners,* 4 Wall. 244 (18 L. Ed. 344, 349) ; *Lionberger v. Rouse,* 9 Wall. 468, 473 (19 L. Ed. 721, 723).

This was tantamount to saying that the tax on shares might not be construed as a tax on the capital of the corporation. *Bradley v. People,* 4 Wall. 459, 462 (18 L. Ed. 433, 435) ; *Hepburn v. School Directors,* 23 Wall. 480.

This construction of the statute was distinctly recognized in the recent case of *Home Savings Bank v. Des Moines,* 205 U. S. 503, 516, the court saying : ''The right of such taxation rests upon the theory that shares in corporations are property entirely distinct and independent from the property of the corporation. The tax on an individual in respect to his shares in a corporation is not regarded as a tax upon the corporation itself.''

The tax may not be levied on the corporation's holdings of bonds or other property, but on the shareholder's stock, and this irrespective of whether the holdings of the corporation are exempt from taxation in the hands of individuals or not. From these considerations and the exaction of equality by the federal statute, we conclude that : (1) shares of stock of national banks must be taxed to the individual owner; (2) shares of stock of state banks must be taxed to the individual owner; (3) the corporation or bank and the property which it owns are separate and distinct from the shares of the individual shareholder.

II. Though the shares of stock of the national banks are to be taxed to the owners of such shares, these may not be at a greater rate than is assessed on other moneyed capital in the hands of individual citizens of the state.

2. TAXATION : national bank shares : private bankers : deducting federal bonds and stock "otherwise taxed" : unlawful discriminations.

A rate may be greater, not only owing to a higher percentage of the levy, but in consequence of some method of assessment or taxation which would discriminate against national banks unfavorably. *People v. Weaver,* 100 U. S. 539. And by ''other moneyed capital'' is meant capital in a like enterprise, rather than invested

in corporations of some other character, such as insurance companies, express companies, telephone companies and the like, and coming in competition with national banks. This question is fully discussed in *Mercantile Nat. Bank of New York v. Mayor, etc., of New York,* 121 U. S. 138 (30 L. Ed. 895), where Mr. Justice Matthews says: ''The key to the proper interpretation of the act of Congress is its policy and purpose. The object of the law was to establish a system of national banking institutions, in order to provide a uniform and secure currency for the people, and to facilitate the operations of the Treasury of the United States. The capital of each of the banks in this system was to be furnished entirely by private individuals; but, for the protection of the government and the people, it was required that this capital, so far as it was the security for its circulating notes, should be invested in the bonds of the United States. These bonds were not subjects of taxation; and neither the banks themselves, nor their capital, however invested, nor the shares of stock therein held by individuals, could be taxed by the States in which they were located without the consent of Congress, being exempted from the power of the States in this respect, because these banks were means and agencies established by Congress in execution of the powers of the government of the United States. It was deemed consistent, however, with these national uses, and otherwise expedient, to grant to the States the authority to tax them within the limits of a rule prescribed by the law. In fixing those limits it became necessary to prohibit the States from imposing such a burden as would prevent the capital of individuals from freely seeking investment in institutions which it was the express object of the law to establish and promote. The business of banking, including all the operations which distinguish it, might be carried on under state laws, either by corporations or private persons, and capital in the form of money might be invested and employed by individual citizens in many single and separate operations forming substantial parts of the business of bank-

ing.  A tax upon the money of individuals, invested in the form of shares of stock in national banks, would diminish their value as an investment and drive the capital so invested from this employment, if at the same time similar investments and similar employments under the authority of state laws were exempt from an equal burden.   The main purpose, therefore, of Congress, in fixing limits to state taxation on investments in the shares of national banks, was to render it impossible for the State, in levying such a tax, to create and foster an unequal and unfriendly competition, by favoring institutions or individuals carrying on a similar business and operations and investments of a like character.   The language of the act of Congress is to be read in the light of this policy.

"Applying this rule of construction we are led, in the first place, to consider the meaning of the words 'other moneyed capital,' as used in the statute.   Of course it includes shares in national banks; the use of the word 'other,' requires that.   If bank shares were not moneyed capital, the word 'other' in this connection would be without significance. But 'moneyed capital' does not mean all capital the value of which is measured in terms of money.   In this sense, all kinds of real and personal property would be embraced by it, for they all have an estimated value as the subjects of sale. Neither does it necessarily include all forms of investment in which the interest of the owner is expressed in money. Shares of stock in railroad companies, mining companies, manufacturing companies, and other corporations, are represented by certificates showing that the owner is entitled to an interest, expressed in money value, in the entire capital and property of the corporations, but the property of the corporation which constitutes its invested capital may consist mainly of real and personal property, which, in the hands of individuals, no one would think of calling moneyed capital, and its business may not consist in any kind of dealing in money, or commercial representatives of money.

"So far as the policy of the government in reference to national banks is concerned, it is indifferent how the States may choose to tax such corporations as those just mentioned, or the interest of individuals in them, or whether they should be taxed at all. Whether property interests in railroads, in manufacturing enterprises, in mining investments, and others of that description, are taxed or exempt from taxation, in the contemplation of the law, would have no effect upon the success of national banks. There is no reason, therefore, to suppose that Congress intended, in respect to these matters, to interfere with the power and policy of the States. The business of banking, as defined by law and custom, consists in the issue of notes payable on demand, intended to circulate as money where the banks are banks of issue; in receiving deposits payable on demand; in discounting commercial paper; making loans of money on collateral security; buying and selling bills of exchange; negotiating loans, and dealing in negotiable securities issued by the government, state and national, and municipal and other corporations. These are the operations in which the capital invested in national banks is employed, and it is the nature of that employment which constitutes it in the eye of this statute 'moneyed capital.' Corporations and individuals carrying on these operations do come into competition with the business of national banks, and capital in the hands of individuals thus employed is what is intended to be described by the act of Congress. That the words of the law must be so limited appears from another consideration; they do not embrace any moneyed capital in the sense just defined, except that in the hands of individual citizens. This excludes moneyed capital in the hands of corporations, although the business of some corporations may be such as to make the shares therein belonging to individuals moneyed capital in their hands, as in the case of banks. A railroad company, a mining company, an insurance company, or any other corporation of that description, may have a large part of its capital invested in securities

payable in money, and so may be the owners of moneyed capital; but, as we have already seen, the shares of stock in such companies held by individuals are not moneyed capital.

"The terms of the act of Congress, therefore, include shares of stock or other interests owned by individuals in all enterprises in which the capital employed in carrying on its business is money, where the object of the business is the making of profit by its use as money. The moneyed capital thus employed is invested for that purpose in securities by way of loan, discount, or otherwise, which are from time to time, according to the rules of the business, reduced again to money and reinvested. It includes money in the hands of individuals employed in a similar way, invested in loans, or in securities for the payment of money, either as an investment of a permanent character, or temporarily with a view to sale or repayment and reinvestment. In this way the moneyed capital in the hands of individuals is distinguished from what is known generally as personal property. Accordingly, it was said in *Evansville Bank v. Britton*, 105 U. S. 322, *supra*: 'The act of Congress does not make the tax on personal property the measure of the tax on the bank shares in the State, but the tax on moneyed capital in the hands of the individual citizens. Credits, money loaned at interest, and demands against persons or corporations are more purely representative of moneyed capital than personal property, so far as they can be said to differ. Undoubtedly there may be said to be much personal property exempt from taxation without giving bank shares a right to similar exemption, because personal property is not necessarily moneyed capital. But the rights, credits, demands, and money at interest mentioned in the Indiana statute, from which bona fide debts may be deducted, all mean moneyed capital invested in that way.' "

Other decisions reach the same general conclusions, though clothed in somewhat different language, and their cita-

tion is unnecessary. Accepting the definitions quoted, can it be said that deducting U. S. bonds and stocks otherwise assessed from the property to be assessed to private banks is to discriminate in their favor as against the shareholder of national banks? In *People v. Commissioners,* 4 Wall. 244 (18 L. Ed. 344), the point was touched and the court, speaking through Mr. Justice Nelson, said:

"It is argued that the assessment upon the shares of the relator is at a greater rate than that of the personal property of individual citizens, upon the ground that allowance was made on account of United States securities held and owned by them, when at the same time the deduction was disallowed to him. The answer is, that upon a true construction of this clause of the act, the meaning and intent of the lawmakers were, that the rate of taxation of the shares should be the same, or not greater, than upon the moneyed capital of the individual citizen *which is subject or liable to taxation.* That is, no greater proportion or percentage of tax in the valuation of the shares should be levied than upon other moneyed taxable capital in the hands of the citizens. This rule seems to be as effectual a test to prevent unjust discrimination against the shareholders as could well be devised. It embraces a class which constitutes the body politic of the state who make its laws and provide for its taxes. They cannot be greater than the citizens impose upon themselves. It is known as sound policy that, in every well regulated and enlightened state or government, certain descriptions of property, and also certain institutions—such as churches, hospitals, academies, cemeteries and the like—are exempt from taxation; but these exemptions have never been regarded as disturbing the rates of taxation, even where the fundamental law had ordained that it should be uniform. The objection is a singular one. At the time Congress enacted this rule as a limitation against discrimination, it was well known to that body that these securities in the hands of the citizen were exempt from taxation. It had

been so held by this court, and, for abundant caution, had passed into a law.

"The argument founded on the objection, if it proves anything, proves that these securities should have been taxed in the hands of individuals to equalize the taxation; and, hence, that Congress by this clause in the proviso intended to subject them, as thus situated, to taxation, and, therefore, there was error in the deduction. This we do not suppose is claimed. But if this is not the result of the argument, then, the other conclusion from it is, that Congress required that the commissioners should deduct the securities, and at the same time intended the deduction, if made, should operate as a violation of the rate of the tax prescribed. We dissent from both conclusions and think a sound construction of the clause and one consistent with its words and intent, is also consistent with all the acts of Congress on the subject."

The question was exhaustively considered in *Exchange National Bank v. Miller*, 19 Fed. R. 372, and after reviewing the authorities the court said:

"By Sec. 2759, Rev. St. Ohio, the county auditor is required to allow to every individual banker and to every unincorporated bank, in addition to the credits allowed in the valuation for taxation of national bank shares, 'the average amount of United States government and other securities that are exempt from taxation,' held by such banker or unincorporated bank. Wherefore, it is argued that the taxation upon the national bank shares is in violation of the first restriction imposed by Congress, in that it is 'at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens.' No complete definition of other 'moneyed capital' has been given. It must, however, be held to mean other taxable moneyed capital. Otherwise, the law of Congress, permitting taxation of the shares, would defeat itself, for they could not be taxed at a greater rate than individual investments in United States bonds, which are

exempt. Unincorporated banks and individual bankers can be taxed only upon their property. The statement they are required to make and return to the auditor shall, the law says, set forth not only their taxable property, but also United States bonds and other non-taxable securities held by them. The auditor is required to deduct from the statement so made and returned that which the state has no power to tax. The statute creates no exemption. It lays hold upon every item of property which it can reach, and taxes every item which it can tax, allowing only the credits allowed to other individual taxpayers. The auditor, accordingly, in fixing the amount for taxation, deducts from the statement, which the law compels the unincorporated bank and the individual banker to make, the securities which the state could not tax if it would. If it were material to inquire why the law requires that non-taxable securities shall be included in the return, the answer might be suggested by Secs. 139 and 1522 of the Revised Statutes of Ohio, relating to the statistical duties of the secretary of state and of assessors. Every taxpayer is required, at the time of listing his property, to make to the assessor a verified statement, which shall include, among other things, 'the amount of United States bonds owned, the amount of legal tender notes or money exempt from taxation, and the amount of state bonds or certificates. As the unincorporated bank and the individual banker make their returns to the auditor, it is provided that those returns shall contain the items which the assessor, in the discharge of his statistical duties, is required to take from every individual taxpayer.'

"Unless the taxation on the shares in national banks is indirectly a tax on the property of the bank, there is no discrimination in favor of the individual banker and the unincorporated bank. But in *Van Allen v. The Assessors,* 3 Wall. 573, the Supreme Court of the United States decided that 'the tax on the shares is not a tax on the capital of the bank.' "

It is clear enough under these decisions that deducting U. S. bonds from property of the private bank in assessing its property involved no discrimination against shareholders of national banks. All the shareholder can demand is that his shares be taxed at the same rate as the property of the private banker. The bonds are non-taxable, and reference certainly could not have been to these in exacting equality. The discrimination is prohibited as to property which may be taxed, and there is none under the state statutes between that on the shares and property of the private banker which may be taxed. Nor does such discrimination result from the deduction from property assessed against the private bank of stock otherwise taxed. It is not pretended that as "otherwise taxed" the tax thereon is not equal to that levied against shares of stock issued by national banks, and the criticism is not that taxation is not equal, but that the stock in other corporations is not twice subjected to taxation. An intention that government bonds shall be taxed when declared by law not to be taxable, or that stocks shall be twice taxed, is not imputable to Congress or to the state legislature, and to obviate this is the purpose as well as the effect of the provisions for their deduction from the property of private banks. The property of the private bank is necessarily assessed to the owner thereof, as are the shares of national bank stock, and the rate of taxation thereon is the same. That government bonds may not be taxed does not affect this rate, nor does the circumstance that other stocks otherwise taxed are not assessed against the bank establish the fact of discrimination. As observed in *First National Bank v. Chapman*, 173 U. S. 205 (43 L. Ed. 669), "That mathematical equality is not arrived at in the process is immaterial. It cannot be reached in any system of taxation and it is useless and idle to attempt it. Equality, so far as the differing facts will permit, and as near as they will permit, is all that can be aimed at or reached."

By treating shares of national bank stock as distinct

entities or items of property, little difficulty is experienced in reaching the conclusion that no discrimination, such as is prohibited by Sec. 5219 of the Revised Statutes of the U. S., is effected by Chapter 63 of the Acts of the 34th General Assembly (*National State Bank v. The Mayor & City Council of Burlington*, 119 Iowa 696), and the judgment of the district court in so ruling has our approval.—*Affirmed.*

DEEMER, C. J., GAYNOR and SALINGER, JJ., concur.