FIRST NATIONAL BANK OF COUNCIL BLUFFS et al., Appellants,
v. CITY OF COUNCIL BLUFFS et al., Appellees.

TAXATION: Levy and Assessment—Review and Correction—Objec-
1 tions—Sufficiency. Objections before the board of review to an
assessment must be so stated that said board will clearly and
definitely understand the *precise* grievance complained of and
the relief asked, and on appeal the property owner must stand
or fall thereon. (Sec. 1373, Code, 1897.)

TAXATION: Levy and Assessment—Corporate Stock—Deductions—
2 United States Bonds. Deductions for United States bonds, held
by a national bank as part of its capital stock, need not be
made in assessing the shares of stock of such bank.

TAXATION: Levy and Assessment—Objections—Construction. The
3 construction which a taxpayer places on his objections to an
assessment, both before the board of review and in his notice
and petition on appeal from the adverse action of the board,
may very materially aid in determining just what question he
intended to raise and did raise before the said board.

TAXATION: Levy and Assessment—Validity—Absence of Assessor's
4 Oath. The confirmation by the county board of review of an
assessment as made by the assessor, *after due hearing on ob-
jections by the property owner to the assessment*, renders quite
immaterial the failure of the assessor to attach to the assess-
ment rolls his oath as to the correctness of the assessment.
(See Section 1365, Code, 1897.)

CONSTITUTIONAL LAW: Privileges or Immunity and Class Legis-
5 lation—Exclusive Privileges to Banks. An act which provides
that the stock of a state bank, etc., shall not be assessed *to
the bank*, as was formerly required (with right in the bank
to collect of the stockholder), is not the granting of an "exclu-
sive privilege" to such bank, within the meaning of Section 12,
Article 8, of the Constitution, requiring acts which grant "ex-
clusive privileges" to be passed by a two-thirds vote of both
houses of the general assembly.

*Appeal from Pottawattamie District Court.*—THOMAS AR-
THUR, Judge.

MARCH 12, 1917.

Rehearing Denied December 18, 1917.

Appeal from the action of the city council of the city of Council Bluffs, Iowa, sitting as a board of review for the equalization of the assessment of property within the city limits. Decree in the district court dismissing plaintiffs' petition. Plaintiffs appeal.—*Affirmed.*

*Tinley, Mitchell & Pryor* and *Addison G. Kistle,* for appellants.

*L. W. Schneider* and *H. L. Robertson,* for appellees.

Gaynor, C. J.—This is an appeal from the action of the city council of the city of Council Bluffs, acting as a board of review in and for said city, for the year 1913. The appeal is taken from the action of the board in approving the assessor's books for said year, in so far as it involves an assessment of shares of stock of the First National Bank of Council Bluffs to its shareholders.

It appears from the records of the board that, on the 15th day of May, 1913, the city council of the city of Council Bluffs met as a board of review. At this meeting and on said date, the assessor appeared before the board with his books, and commenced the reading of the assessment roll, and the clerk was instructed to keep a list of all assessments. At this meeting, the assessments were approved as far as read. For further consideration of the assessments, the board adjourned until May 16th. On May 16th, the council reconvened, and the assessor resumed the reading of the assessment rolls until the board adjourned to meet again on the 20th day of May, 1913. On the 20th day of May, 1913, the board having reconvened as a board of review, J. J. Spindler, cashier of the plaintiff bank, appeared before the board and presented a communication making demand that said board make a deduction of United States bonds held by the bank at par, of the value

of $268,000. On motion, this was refused. This communication was ordered received and placed on file by the board. The communication referred to in the record, presented by J. J. Spindler, cashier of the First National Bank, on behalf of the bank and its shareholders, recited:

That the bank on its own behalf and for and on behalf of the several stockholders of the bank *as the same appear upon the assessment roll now under consideration by the board of review,* do hereby enter their protest to the assessment of said bank and its shareholders, upon the following grounds: (1) That the assessment of said bank and shareholders is without warrant or authority of law. (2) That said several assessments are each of them excessive. (3) That said assessments, and each of them, are excessive for the reason that the assessor has failed to deduct from the assets of said bank United States government bonds held and owned by it, in the amount of $268,000, as shown by its returns to the assessor.

This communication was submitted to the board, duly considered and acted upon by it. The details of the proceedings before the board do not appear in its records. After the assessment and objections of the bank, hereinbefore set out, were considered by the board, the following record was made:

"All objections having been heard and passed upon by the board, on motion a vote of thanks was extended to the assessor for his accuracy in his books, and that the assessment of the property within the city of Council Bluffs stand as made by the assessor, and as shown by his returns and approved by the board."

For a better understanding of some of the controversies that have arisen in this case, it is well to note what was before the board at the time it acted upon the objections filed by the plaintiff. It seems that the bank, in pursuance of the provisions of Section 1322 of the Code of 1897, had

furnished the assessor with a list of all stockholders and the number of shares owned by each. This section provides:

"Shares of stock of national banks shall be assessed to the individual stockholders at the place where the bank is located. * * * At the time the assessment is made, the officers of national banks shall furnish the assessor with a list of all the stockholders and the number of shares owned by each, and he shall list to each stockholder under the head of corporation stock the total value of such shares. To aid the assessor in fixing the value of such shares, the corporations shall furnish him a verified statement of all the matters provided in the preceding section, which shall also show, separately, the amount of capital stock, and surplus and undivided earnings, and the assessor, from such statement and other information he can obtain, including any statement furnished to and information obtained by the auditor of state, which shall be furnished him on request, shall fix the value of such stock, taking into account the capital, surplus and undivided earnings."

The statement furnished by the bank was in full compliance with the requirements of this section, and contained all that this section required of it. To this statement was attached the following, signed by the cashier:

"In regard to the statement of assets, liabilities, etc., of the First National Bank, as of the 1st day of January, 1913, handed you for the purpose of assisting in fixing the value of the shares of stock to be assessed to individuals of this bank, we demand and insist that you make a deduction of the United States bonds held by us at par value, of the amount of $268,000."

In one of the assessor's books referred to in the minutes of the board, in so far as it involves the matter in controversy, there appeared, under the heading, "Assessor's Book of Council Bluffs, Pottawattamie County, Iowa, 1913," the

following: "William Arndt, 100 shares of capital stock of said bank at $128 per share;" under the head "Corporation Stock, $12,800, Actual value $12,800. Taxable value, $3,200." Following, and in the same form, appeared the names of all the shareholders of the capital stock of the bank, as shown by the return of the bank hereinbefore referred to. This seems not to have been verified by the oath of the assessor, as required by Section 1365 of the Code of 1897.

There seem to have been six books returned by the assessor and filed with the auditor. In one of the books appears the following oath:

"I, W. D. Hardin, assessor, etc., do solemnly swear that the actual and taxable value of all property, money and credits of which a statement has been made and verified by the oath of the person required to list the same, is hereby truly set forth as a copy of Rolls No. 1 and 2, together with the changes made by the board of review. That in every case where I have been required to ascertain the amount or value of any property, I have diligently and in the best means in my power endeavored to ascertain the true amount and value, and as I verily believe, the actual and taxable value thereof are set forth in the annexed return. In no case have I knowingly omitted to demand of any person of whom I was required to do so a statement of the items of his property which he was by law required to list, nor to administer the oath to him unless he refused to take it; nor in any way connived at any violation or evasion of the requirements of the law in relation to the assessment of property for taxation."

On the back and cover of the book in which this oath appeared, being one of the books returned by the assessor, appeared the following, "1913—Assessor's Book—Unknown."

The bank's communication hereinbefore referred to, to wit, the report of the bank to the assessor, the assessment

of the shares of stock made by the assessor in one of the books under the heading hereinbefore set out, and this oath, were all before the board of review at the time it acted on the plaintiff's objections. From the action of the board in approving the assessment and in rejecting plaintiff's claim to have the value of the United States bonds owned by the bank deducted from the assessment, the plaintiff appealed to the district court. In the district court, the plaintiff filed a petition setting up and urging many other points of objection to the assessment, not urged, considered or passed upon by the board.

1. TAXATION: levy and assessment: review and correction: objections: sufficiency.

Before coming to the consideration of matters properly before this court for consideration, we have to say that, while the statute does not provide that the complaint of the taxpayer to the board shall be in any particular form of words, yet it must be so framed and presented to the board that the errors complained of and the relief asked shall be made known to the board, to the end that it may act intelligently upon the complaint and grant to the taxpayer the relief sought if, under the law and facts, it appears to the board that he is entitled to the same. Section 1373 of the Code of 1897 provides:

"Any person aggrieved by the action of the assessor in assessing his property may make oral or written complaint thereof to the board of review, which shall consist simply of a statement of the errors complained of, with such facts as may lead to their correction, * * * and appeals may be taken from the action of the board with reference to such complaints to the district court."

The spirit and purpose of this statute is that the taxpayer coming before this tribunal for relief must state his grievance with sufficient particularity and must specify his complaint with sufficient certainty to enable the tribunal, supposing it to possess ordinary intelligence, to compre-

hend and understand the matters of which complaint is made, and to grant the particular relief sought for in the complaint. He is not entitled to have any question determined on appeal, except such as he called upon the tribunal to determine in the first place. The appeal reviews the action of the officer or tribunal from which the appeal is taken. The appeal is to determine whether it acted properly in denying relief upon the complaint made. The objections must indicate with reasonable certainty the matters in the assessment to which the complaining party takes exception.

As bearing upon this question, among our later decisions will be found *In re Assessment of Farmers L. & T. Co.*, 155 Iowa 536. See also *Gibson v. Cooley,* 129 Iowa 529; *Schoonover v. Petcina*, 126 Iowa 261. This last case was an appeal from the action of the treasurer in assessing moneys and credits claimed to have been omitted from the assessments for preceding years. The court said:

"The treasurer, when acting with reference to the assessment of property, is not a judicial officer, and the ordinary rules of pleading and evidence applicable to the trial of a case in court need not, and indeed could not, be followed in the proceedings before him. The plaintiff was entitled on his appeal to have determined every question which the treasurer was called upon to determine with reference to the liability of the plaintiff to assessment on moneys and credits for the years specified. * * * The issue before the district court on such appeal is as to the correctness of the action of the assessing officer or tribunal, and the evidence must be confined to that question."

We take it that but two complaints were made to the board of review: First, that the assessment was without warranty or authority of law. Second, that the assessment is excessive for the reason that the assessor failed to deduct from the assets of the bank the United States gov-

ernment bonds held and owned by it. These being the only complaints made before this assessing tribunal, these are the only complaints which can be considered on this appeal.

2. TAXATION: levy and assessment: corporate·stock: deductions: United States bonds.

The second proposition is disposed of adversely to plaintiff's claim in the late case of *Head v. Board of Review*, 170 Iowa 300, in which it is said:

"It is to be kept in mind that the shares as distinct items of property are to be assessed, and not the property of the corporation. Though the bank may pay the taxes, this is done not in its behalf, but for the shareholders. Neither the corporation nor its property is assessed. This was first settled in *Van Allen v. Assessors*, 3 Wall. 573 (18 L. Ed. 229). There, all the capital of the bank had been invested in nontaxable national securities, and yet, after great consideration, the court held that the shares of stock might be assessed under the laws of New York without taking into account the nontaxable character of the investment. * * * This was tantamount to saying that the tax on shares might not be construed as a tax on the capital of the corporation."

3. TAXATION: levy and assessment: objections: construction.

The first complaint is not specific, but it is claimed that, under this complaint, all questions presented on the appeal are necessarily involved. We are satisfied, however, that the board of review did not so understand, nor does the original petition filed on appeal nor the notice given on appeal suggest as broad a scope for this complaint as is now contended for it, and it is apparent, from the whole record made before the board of review, that the only question urged before the board was that the assessment was without warrant or authority of law, because, in making the assessment against the holders of the shares of stock, the board did not take into consideration the fact that the

bank had invested a large portion of its capital in United
States government bonds, which were exempt from taxa-
tion; that the tribunal erred in approving the assessment
made by the assessor and in not allowing for these bonds
in determining the value of the capital stock of the corpo-
ration assessable under the law. We might stop the in-
vestigation here, upon the authority of *Head v. Board of
Review,* supra.

It is contended, however, that, if the assessment was
wholly void, the board erred in not saying so, and that this
fact was involved in the first division of the complaint
made. We will consider the case from this viewpoint, and
therefore consider some of the objections urged upon ap-
peal, assuming that they are in the first division of the
complaint made before the board of review.

First, it is said that the assessment is
4. Taxation: void for the reason that the assessor did not
levy and as-
sessment: va- attach to the assessment rolls his oath, as
lidity: absence
of assessor's required by Section 1365 of the Code; that,
oath.
the assessment being void, it may be at-
tacked on appeal; that, without the oath, the assessment
is absolutely void; and reliance is had upon the holding
in *Warfield-Pratt-Howell Co. v. Averill Groc. Co.,* 119 Iowa
75. In this case, the assessment in question was made
upon a stock of goods of which the defendant was the own-
er up to June 1, 1899, when it delivered the stock to Letts-
Fletcher Company, of Marshalltown. The latter company
sold and delivered the stock to the plaintiff. The stock was
assessed to the Averill Grocery Company. No oath was
made by the assessor and attached to the assessment roll.
A tax being levied upon this assessment, and collection
threatened by distress and sale, the plaintiff paid the entire
amount of the tax, and brought this action to recover from
the Averill Grocery Company. It was held in that case
that the statute requiring the oath of the assessor to be

attached to the assessment rolls is mandatory, and that a failure to attach the oath rendered the assessment void; that no levy could be made on a void assessment. It was said:

"The oath of the assessor * * * is exacted as a means not only to secure faithful performance of duty to the public, but to safeguard the interests of the taxpayer in the fair and just assessment of his property. We deem it essential to a valid assessment."

And it was held that, the assessment being invalid, no recovery could be had against the defendant for taxes levied upon an invalid assessment, even though paid by the plaintiff.

In that case it will be noted that the plaintiff paid this tax and sought to recover on the theory that it was a tax levy upon a valid assessment. Therefore, a showing that the tax was void for failure to comply with the requirements of the statute in making the assessment left the plaintiff without any basis for recovery as against the defendant. It followed that, if a void assessment was made upon the property while in the hands of the defendant, the levy of a tax based upon the assessment was equally void; that the defendant never, therefore, became bound to pay it, and the plaintiff could not, by the act of paying this void assessment, create a liability which did not exist.

The case at bar is clearly distinguishable in principle from the rule upon which that case is bottomed. Conceding, for the purposes of this case, that the general oath filed by the assessor, hereinbefore set out, was not a sufficient compliance with the requirements of the statute, and that a tax levy upon the assessment made by the assessor alone would be void, we have to say that the proceeding before the board of review was one of the steps in completing the assessment of plaintiff's property.

The very question before the board for its considera-

tion was whether this property should be assessed, and the amount for which it should be assessed. There was before the board the statement made by the bank to the assessor hereinbefore referred to—a purported assessment made by the assessor, showing the names of all the stockholders of the bank, the number of shares of stock owned by each, the actual value of each share of stock, and the taxable value, ascertained and fixed by the assessor. The plaintiff appeared and objected to this assessment. The board of review heard the objections, and determined, as shown by its records, that the assessment was right as made by the assessor and presented to the board, and that the assessment should stand as made by the assessor, as shown by his returns.

The statute, Section 1370 of the Code of 1897, provides:

"The board * * * shall adjust assessments for the township, city or town by raising or lowering the assessment of any person * * * as to any or all of the items of his assessment, in such manner as to secure the listing of property at its actual value and the assessment of property at its taxable value, and shall also add to the assessment rolls any taxable property not included therein, assessing the same in the name of the owner thereof, as the assessor should have done."

This not only makes the board of local review a body authorized to review assessments made by the regular assessor, but gives it original assessing power.

It is contended, however, that the board did not direct the assessor to add to the assessment rolls, as returned by him, the property now in question; that, therefore, they made no original assessments; that the assessment must therefore, depend upon the returns made by the assessor, unverified by his oath. This is too technical. Everything essential to make a perfect assessment was made by the assessor, except the attachment of an oath to the assessment

rolls, as required by the statute. It was all before the board, fully set out and recorded by the assessor in his book. The names of all the stockholders were there recorded; the actual value of the property and its taxable value as ascertained by the assessor. This was approved by the board of review, after fully considering this objection urged against the assessment.

There is no question made in this controversy that these parties now appealing were not in fact shareholders of stock in the plaintiff bank. There is no question raised as to the actual value of the property as shown by the returns of the assessor to the board. There is no question made as to the taxable value as fixed. No question was made before the board as to the taxable value of this property, other than that involved in the contention that United States bonds held by the bank should be deducted in fixing the taxable value of the property. If this objection had been urged in fact specifically before the board, and it had been there asserted that there was no assessment of this property because of the absence of the assessor's oath, the assessor could have been directed to attach his oath; or, under Section 1370 of the Code of 1897, the board could have added this property to the assessment roll.

We think the approval of the board of the action of the assessor, as shown by his returns then laid before the board, was equivalent to a finding on the part of the board that this property was assessable, that its actual value was as it was set out in the return, and its taxable value as therein indicated. The assessment thereafter represented the action of the board having jurisdiction of the subject matter and of the parties, made upon a full consideration and review imposed upon it by the objections filed by the plaintiff. The plaintiff cannot now be heard to say that the assessment so made was void, based solely on the ground that the assessor did not attach his oath to the assessment

rolls, as required by statute. It is argued that this assessment did not appear upon the assessment rolls. An assessment was made by the assessor of this specific property, and laid before the board. In this assessment, the actual and taxable value of the property was fixed. It was for the board to approve or disapprove the assessment as made. It approved it, and it became the action of this assessing body. It was the judgment of this assessing body expressed in its records, both as to the actual and taxable value of the property. No question is made as to the correctness of the finding, either as to the actual or taxable value of the property. We think there is no merit in this contention of the plaintiff's.

5. Constitutional law: privileges or immunity and class legislation: exclusive privileges to banks. It is next contended that no valid assessment can be made upon the shareholders of shares of stock in savings and state banks and commercial banks and other moneyed capital, for the reason that Chapter 63 of the Acts of the Thirty-fourth General Assembly, now Section 1322, Code Supplement, 1913, is void, in that it was not passed by a two-thirds vote of each branch of the general assembly. It appears that it was not passed by a two-thirds vote of one of the branches of the general assembly. This contention is based on Section 12 of Article 8 of the Constitution, which provides:

"Subject to the provisions of this article, the general assembly shall have power to amend or repeal all laws for the organization or creation of corporations, or *granting of special or exclusive privileges or immunities,* by a vote of two thirds of each branch of the general assembly; and no exclusive privileges, except as in this article provided, shall ever be granted."

The contention is that, prior to the adoption of this act under which this assessment was made, the shares of stock in state banks, etc., were assessable to the bank, and

not to the shareholders. See Section 1322 of the Code of 1897, which provided:

"Shares of stock of national banks shall be assessed to the individual stockholders at the place where the bank is located. Shares of stock of state and savings banks and loan and trust companies shall be assessed to such banks * * * and not to the individual stockholders."

The present act provides for the assessment of shares of stock to the individual shareholders in national banks, state and savings banks, loan and trust companies; and it is argued that this statute relieves state and savings banks from the assessment of shares of stock issued by them, while, under the old law, the shares were assessable to them; that this is the granting of a privilege or immunity to these banks, and therefore, because not passed by a two-thirds vote of both houses, is void, and in contravention of the provisions of Section 12 of Article 8 of the Constitution.

Should we grant the argument, we must grant the conclusion. The capital stock of both national and state banks and other moneyed institutions issuing stock was, at all times, assessable. The method of taxation, of course, was different. Under the old law, the shares of state and savings banks were assessable to the banks, but, when they were assessed to the banks, the law (Section 1325 of the Code of 1897) provided that the banks so paying the assessment might recover from each shareholder his proportion of the taxes so paid, and that the amount paid should be a lien on the stock and unpaid dividends therefor, etc. It was never contemplated that state and savings banks and other moneyed institutions having issued shares of stock should be ultimately liable for the tax levied. They were required to pay it in the first place, with the right to recover over against the shareholder. Even under the old system, in its practical working out, the shareholder paid the tax, and not the bank. A controversy as to whether or not there

was discrimination between national banks and other moneyed institutions in the state in the method of assessing taxes brought about the repeal of the former statutes and the enactment of the present statute, making shares of stock in national, state and savings banks, loan and trust companies, assessable in the first place to the individual stockholders, making the method of assessment as to national banks and other institutions the same. By this act the legislature violated no provision of Section 12 of Article 8 of the Constitution. It cannot be said that the changing of the method of assessment granted to these institutions any "exclusive privileges or immunities," requiring a two-thirds vote.

Other objections are urged and argued, but we do not think they come within the limits of the objections filed before the board, and we do not, therefore, give them consideration. Much of the controversy involved in this case was disposed of in *Head v. Board of Review,* 170 Iowa 300.

We find no reversible error in the record, and the cause is—*Affirmed.*

LADD, EVANS and SALINGER, JJ., concur.