DADE COUNTY, LAMAR PAXSON, Chairman, and C. H. CRANDON, CECIL TURNER, N. P. LOWERY, and J. D. REDD, as and constituting the Board of County Commissioners of Dade County, and CHELSIE J. SENERCHIA, Assistant County Engineer of Dade County, and J. M. BROWN and DANIEL WILLIAMS, v. SOUTH DADE FARMS, INC.

182 So. 858.

En Banc.

Opinion Filed June 15, 1938.

Rehearing Denied June 30, 1938.

*Hudson & Cason* and *Price & Price,* for Appellants;

*Forrest Sullivan, Evans, Mershon & Sawyer, Herbert S. Sawyer* and *Wm. E. Dunwoody, Jr.,* for Appellee.

CHAPMAN, J.—This suit is here on an appeal from a final decree entered in the Circuit Court of Dade County, Florida, dated the 30th of November, 1937, holding the equities of the cause to be with the plaintiff and issuing a permanent injunction. The parties hereto will be referred to in this opinion as they appeared in the lower court as plaintiff and defendants. The bill of complaint alleges, among other things, that the plaintiff was the owner of certain described lands approximating 18,000 acres, which were in a high state of cultivation and used for agricultural purposes; the lands were located in the southeastern portion of Dade County; that the land was valuable only when properly drained; and were drained by means of dykes, drains, ditches, canals and laterals and that the average waterfall annually was about 58 inches, falling, largely, during the trucking season; and that the lands situated adjacent to and north of plaintiff's land, owned in part by the intervenors, was a little higher in elevation but likewise

contained dykes, ditches, canals and laterals necessary to drain the water falling thereon.

On Dade County's land at the intersection of Sections 10, 11, 14 and 15 where Tallahassee and Campbell Roads intersect is a dam in the mouth of a culvert which prevents the flow of water from the north and from the west to the east, and the dam is beneficial in preventing plaintiff's property from being overflowed, thereby affecting its agricultural usefulness if permitted so to do. The dam is the property of the plaintiff, and the effect of the dam is to cause water to run east upon the northern boundary of plaintiff's property through Pine Island and thence flow into Biscayne Bay. It is alleged that many farmers lost their crops due to the water overflow, and that the natural flow of the water on the land is to the eastward and not to the westward.

The prayer of the bill of complaint is as follows:

"* * * plaintiff prays that this Court enter a restraining order herein or a temporary injunction restraining the defendants, and each of them, their agents, engineers, servants and employees, from going upon the land of the plaintiff and removing or destroying, or in any manner disturbing, that certain dam on plaintiff's said land described in the map hereto attached, marked plaintiff's Exhibit 'A,' near the intersection of Sections 10, 11, 14 and 15, and that on a hearing of this cause, said injunction or restraining order be made permanent."

On October 26, 1937, defendants filed their answer to the bill of complaint, admitting the existence of the dam at a culvert within the right of way at the intersection of the roads known as Tallahassee Road No. 128 and Campbell Road No. 303; that the said dam is at the mouth of a culvert and within the right of way of the aforesaid roads, and subject to the control, as a matter of law, of the Board

of County Commissioners of Dade County, Florida; that the making of the dam was wholly unauthorized, without leave or license, was unlawfully placed upon the public road right of way of Dade County, and that said dam or obstruction had caused damage, expense and inconvenience to the defendants; that the Board of County Commissioners of Dade County had a lawful right to control the culverts and the dam at the mouth thereof because it was on land conveyed by a deed to Dade County by plaintiff's predecessor in title, and that plaintiff, without permission or authority of law, caused other ditches and culverts to be dammed or obstructed to the injury of the defendants.

On October 26, 1937, J. M. Brown and Daniel Williams, intervenors, through counsel, filed an answer to the bill of complaint, together with a motion to dismiss. The intervenors asserted ownership of lands located in Sections 10 and 11 lying within the drainage area. The material allegations of the bill of complaint by the intervenors were fully answered or denied. A number of exhibits were attached to and by appropriate allegations made a part of their said answer. The principal ground of the motion to dismiss incorporated in the answer was that the bill of complaint was without equity. The bill of complaint, as well as the answers, were amended by the respective parties.

An application to the Chancellor below for a temporary restraining order was made on the 14th day of October, 1937, when considerable testimony was taken by the parties to the suit, and on the 14th day of October, 1937, after the taking of testimony and argument of counsel, a temporary restraining order was granted and a hearing to dissolve the restraining order was heard by the Court on November 9, 1937, when the said motion to dissolve was by the lower court overruled and denied. A motion for a rehearing was likewise denied and the cause was argued on its merits

on final hearing. The Chancellor below found the equities of suit to be with the plaintiff and the injunction was made permanent.

. From the final decree an appeal has been perfected to this Court and four assignments of error argued for a reversal. The order granting the temporary restraining order, the order overruling and denying the motion to dissolve, the petition for a rehearing and the final decree can in this cause be considered as one assignment.

In considering the testimony in this case, we are, in the beginning, face to face with large groups of witnesses appearing on the stand and each having a comprehensive knowledge of the subject matter before the Court, with an acquaintance with the *locus in quo* for many years, and each giving sharply conflicting material evidence. We find civil engineers giving expert testimony and much of their testimony fails to harmonize. One part or the other offered maps of the County of Dade showing the roads. dam in the mouth of the culvert, dykes, canals, ditches, drains and laterals, and much other very valuable information about the land involved in this litigation, likewise blue prints, well prepared of, the affected area, a number of small pictures, each presenting some important feature of the drainage area, and different proceedings of the Board of County Commissioners of Dade County, Florida, whereby, in part, the roads were created or established, were offered in evidence. The testimony was taken before the Court below, who had an opportunity to see and hear each of the witnesses on the stand, lives and has resided near the drainage district for a number of years and is better acquainted with all the facts involved than any member of this Court, after a hearing of all the parties, made certain findings of fact, viz.:

"(1) That the water when it flowed through the Campbell Street Culvert was precipitated onto the land of the plaintiff in a quantity of volume in excess of what would have reached such land by natural drainage;

"(2) That at times if the 'dam in question' were non-existent water naturally falling on the land to the north of Campbell Street would rain through the Campbell Street culvert onto the land to the south;

"(3) That at other times with Campbell Street culvert open the water on the land on the south would drain northward through said culvert onto the land to the south;

"(4) That with Campbell Street culvert closed and Campbell Street ditch opened to the east as accomplished by the plaintiff, that the land to the north of Campbell Street and west of Tallahassee Road is better drained than it was before the enlargement of Campbell Street ditch to the east and the closing of the culvert by the plaintiff;

"(5) That the dam or closed culvert is on the right of way of Dade County, held by it, and used for highway purposes, but that it is not essential to the proper maintenance of said highway that said culvert be open;

"(6) That under present conditions the plaintiff is entitled to have the culvert in question closed, in that closing same gives it a protection when it has by enlarging Campbell Street ditch given the land to the north as good or better drainage facilities than it enjoyed before the culvert was closed and Campbell Street ditch enlarged;

"(7) That if the culvert in question were now opened that intervenors' land and other land to the north and west of the dam would be better drained and that plaintiff's land would be flooded to a greater extent than under natural conditions.

"There is a maxim that 'water runs and ought to run as it used to run.' All land in varying degrees suffers

from a lack of water or is benefitted or burdened by surface water by forces of nature and when land is held by artificial titles created by artificial laws they must be applied, taking into consideration the application of natural laws. Most land is burdened with the hazard or benefits of water according to the laws of nature, but in order that less harm be done and greater justice be accomplished, the better policy seems to be that no proprietor be called upon to unreasonably suffer by land of another a burden greater than is natural whether he be an upland or the lower land proprietor."

The Chancellor's additional findings of fact are:

"The natural flow or drainage surface water in the vicinity of the intersection of Campbell Street and Tallahassee Road is to the south and southeast (see defendant's topography map marked exhibit 'A'). Plaintiff's land lies to the south of this intersection and intervening defendants' land lies to the northwest of the intersection.

"The conditions at the intersection were such that the plaintiff to protect its land, cleared a culvert under Tallahassee Road on Campbell Street, opened and deepened a ditch on the north side of Campbell Street to the east for several miles and then south to Mowry Street so as to increase the drainage of the land to the north of Campbell Street, and this having been done, it then plugged or dammed up the culvert on the west side of Tallahassee Road under Campbell Street which was the only vent under Campbell Street to the south except those to the east where the water now flows in ditches.

"A fact in this cause is, that by reason of the construction of Tallahassee Road and Campbell Street, the surface waters over a large area are by reason of gravitation and the existence of the highways accumulated from time to time to the north of Campbell Street and west of Tallahassee

Road where they intersect, and are discharged to the east through a culvert under Tallahassee Road and were discharged to the south through a culvert under Campbell Street until this culvert was dammed."

The law controlling the facts here is well expressed by this Court in the case of Brumley v. Dorner, 78 Fla. 495, 83 So. 912, when it said:

"There are two rules of law that have been more or less directly followed concerning the rights of parties with reference to surface waters. These two rules being generally known respectively as the Civil Rule and the Common Law Rule. Under the Civil Law Rule the upper proprietor has the right to have the surface waters flow from his lands to the lower proprietor's in its natural course, but under this rule the upper proprietor has no right, even where the water naturally passes from his land to that of the lower proprietor, to gather the water together into ditches and to cast it in quantities upon the lower proprietor. Under this rule of law the upper proprietor has no right to gather the surface water and direct it out of its natural course and throw it upon the lands of the lower proprietor upon whose lands it would not naturally flow in any quantity, but the lower proprietor has the right to have the surface water carried from the upper proprietor in its natural course and not to be cast upon his lands by drainage or otherwise. Under the Common Law Rule, carried to its last analysis, or, as claimed by some courts, the surface water that falls upon lands is the natural enemy against which all persons may contend without reference to the rights of any other land owner, each land owner being required to protect himself against surface waters. Both of these rules have been considerably modified by the courts and it seems to be almost the unanimous verdict of the courts that each case must stand upon its own facts, there being some general

rules laid down by the courts to be applied to each case, as the facts are. The almost universal rule, as gathered from the decisions, is that no person has the right to gather surface waters that would naturally flow in one direction by drainage, ditches, dams, or otherwise, and divert them from their natural course and cast them upon the lands of the lower owner to his injury. * * *"

See Seaboard All-Florida Ry. Co. v. Underhill, 105 Fla. 409, 141 So. 306; Brown v. Solary, 37 Fla. 102, 19 So. 161; Schofield v. Cooper, 126 Iowa 261, 102 N. W. 110; Melin v. Richman, 96 Conn. 686, 115 Atl. 426; 27 R. C. L., pages 1139-1154, par. 71-80; 67 Corpus Juris, 862-871, par. 286-295.

This Court has not only approved but has commended Chancellors of the lower courts in making specific findings of fact in Chancery cases and has pointed out that these findings greatly facilitate the disposition of causes in an appellate court. These findings can be used as a guide in this Court in reviewing the correctness and conclusions of each finding as disclosed by the transcript of the record. See Day v. Weadock, 101 Fla. 333, 134 So. 525; Gregg Maxcy, Inc., v. Bateman, 119 Fla. 490, 160 So. 745. The court below having made specific findings of fact in this case and having applied the law as settled by this Court relative thereto, the sole question here for consideration is: Are the findings of fact made by the court below and as expressed in the final decree clearly erroneous? In the case of Farrington v. Harrison, 95 Fla. 769, 116 So. 497, this Court said:

"We also bear in mind the oft reiterated rule that while the findings of the chancellor on the facts where the evidence is heard by him, and the witnesses are before him, are entitled to more weight in the Appellate Court than where such findings are made in a cause where the testimony was

not taken before the chancellor, yet in either case the chancellor's findings should not be disturbed by an Appellate Court unless shown to be clearly erroneous. Sandlin v. Hunter Co., 70 Fla. 514, 70 Sou. Rep. 553; Travis v. Travis, 81 Fla. 309, 87 South. Rep. 762; Lucas v. Wade, 43 Fla. 419, 31 South. Rep. 23.

"On the other hand, where a decree is manifestly against the weight of the evidence or contrary to and unsupported by the legal effect of the evidence, then it becomes the duty of the Appellate Court to reverse such decree. Carr v. Leslie, 73 Fla. 233, 74 South. Rep. 207; Florida National Bank v. Sherouse, 80 Fla. 405, 86 South. Rep. 279; Gill v. Chappelle, 71 Fla. 479, 71 South. Rep. 836; Lightsey v. Washington Park Properties, 112 South. Rep. 555."

See Atlantic Bank, etc., v. Sengstak, 95 Fla. 605, 116 So. 267; Mock v. Thompson, 58 Fla. 477, 50 So. 673; Kent v. Knowles, 101 Fla. 1375, 133 So. 315, 317.

Counsel for the intervenors have presented here a number of weighty questions for decision and among them are: the County Commissioners of Dade County, Florida, have plenary power over the public roads and, obtaining this power by statute, the courts are powerless to control their action. While full power may rest with the Board of County Commissioners to control the construction of roads and provide for their adequate drainage, as contended by counsel, the 18,000 acres of the plaintiff and the lands of the intervenors could not be drained by the county, and we have before us the surplus water which will materially affect the agricultural lands of the plaintiff, situated south, of Campbell Road, if the surplus water is permitted to flow over the same. The Chancellor found that the lands north of Campbell Road were more effectively drained by the dam continuing in the mouth of the culvert.

It is next contended that plaintiff's predecessor in the chain of title was an original signer of the petition addressed to the Board of County Commissioners requesting the surveying, opening up, and establishing of the Tallahassee and Campbell Roads, and for said reasons plaintiff here is estopped by these facts from maintaining the suit at bar. We are at a loss to understand how the plaintiff would be estopped from its efforts to provide for the adequate drainage of its agricultural lands by joining others in obtaining the establishment of a road through its property.

The question whether the flow of the water from the north through the lands of the plaintiff is an easement that can be controlled by the County Commissioners. and the election of remedies, are each argued and well briefed, and that the plaintiff as a lower land owner was without legal authority to change the natural flow of surface water. We can agree with counsel as to the principles of law, but the findings of fact as made by the Chancellor are to the contrary view.

The lower court, in the final decree dated November 30, 1938, said: "The court retains jurisdiction of this cause to make such other and further orders as to the court may seem meet and proper appertaining to the said injunction, notwithstanding anything aforesaid to the contrary." It will be observed by the terms of the final decree that the lower court would at all times in the future be open to hear, consider or adjudicate any unforeseen exigencies not now before the Court in connection with the suit at bar, or, in other words, it retained a continuing jurisdiction. It seems that the lower court did its very best to do substantial justice as between the parties with a very stubborn set of facts.

We have given careful consideration to each question presented and fail to find reversible error. It follows that the decree appealed from is hereby affirmed.

WHITFIELD, BROWN and BUFORD, J. J., concur.

## ON PETITION FOR REHEARING

PER CURIAM.—A petition in this case presents eight separate grounds or reasons for a rehearing. Each of these grounds raise or present some questions of fact and not of law. When this Court considered the case, due weight and consideration were given to all the evidence offered by the respective parties. We have again reviewed the evidence in light of the criticism or suggestions as contained in the petition. While the evidence is sharply conflicting, this Court is bound by its decisions in handling business before it. While a finding of facts favorable to either party to this cause no doubt would work a hardship and inconvenience to the other, but the law of the case was properly applied to the facts by the lower court and his conclusions or findings of fact is not manifestly against the weight of the evidence or contrary to and unsupported by the legal effect of the evidence.

We think the law was properly applied to the facts as proven and due consideration has been given to each ground of the petition for a rehearing and find no legal reason shown why a rehearing should be granted. The said petition for rehearing is denied.

WHITFIELD, BROWN, BUFORD and CHAPMAN, J. J., concur.