F. E. WILLIS v. V. G. PHILLIPS, as Chairman, HUNTER BANNERMAN, COUNCIL ALLEN, C. M. AUSLEY and J. R. WHEELER, as and Constituting the Board of County Commissioners of Leon County, Florida.

2 So. (2nd) 732
Special Division A
Opinion Filed May 30, 1941

*C. N. Ashmore,* for Appellant;

*J. Lewis Hall,* for Appellees.

CHAPMAN, J.—From an order denying a mandatory injunction entered by the Circuit Court of Leon County, Florida, commanding the Board of County Commissioners of Leon County, Florida, to abate and remove a certain ditch and water culvert situated at the intersection of Betton Hill and Centerville Roads, a short distance from the City of Tallahassee, so as to prevent surface water from flooding the land and damaging crops of the plaintiff, an appeal has been perfected to this Court. The ditch was cut and the culvert placed under the Centerville road by the commissioners in the discharge of their official duties in the construction and maintenance of the public roads of Leon County, Florida, as prescribed by the statutes of Florida. The surface water only is here involved coupled with the natural flow thereof from the point of intersection of the two roads on the property of plaintiff below.

The able chancellor below in deciding the case made definite and positive findings of fact and placed the same in his order, and the same are helpful in reviewing the case at bar. The chancellor found, viz.:

"There appears from the testimony and are found by the Court to be the facts that:

"1. That the water which now drains through the culvert under the Centerville Road at the intersection

with the new Betton Hill Road follows the course of natural drainage.

"2. That the water which flows through the culvert aforesaid is directed into an established and existing water course, which water course originates on the land of Mrs. W. C. Hodges, which land is adjacent to the Centerville Road.

"3. That the watercourse on the land of Mrs. W. C. Hodges runs in a North-Northeasterly direction approximately parallel to the Centerville Road, and that said watercourse crosses the land of plaintiff and terminates in a pond Northeast of plaintiff's property.

"4. That the area of the land drained through said culvert and into said watercourse is approximately thirty-five (35) acres.

"5. That in addition to the area of thirty-five (35) acres draining through the culvert, that an area of approximately one hundred fifty (150) acres drains into the watercourse aforesaid and crosses the land of plaintiff.

"6. That the damages shown by the plaintiff are in the amount of approximately Three Hundred Dollars ($300.00).

"7. That the cost of preventing the damage by the means suggested by plaintiff in the bill of complaint, would cost the county approximately Seven Thousand to Ten Thousand Dollars ($7,000.00 to $10,000.00).

"8. That any flooding of plaintiff's land is the result of plaintiff's obstructing the natural watercourse across his property as aforesaid.

"9. That the plaintiff purchased the property which he complains is flooded after the construction of the New Betton Hill Road and the enlarging of the culvert at the point of intersection of the new Betton Hill Road with the Centerville Road.

"10. That the construction of a ditch along the Centerville Road to drain the water from Betton Hill Subdivision would divert water from its natural course, which is across plaintiff's land, and cause water from Betton Hill Subdivision to be directed over and onto lands where such water would not flow in the natural course of drainage.

"The foregoing facts appearing from the testimony and the Court finding the same as facts established in this cause, and the Court being of the opinion that under applicable rules of law that the plaintiff has not shown any grounds for relief;

"IT IS THEREUPON ORDERED, ADJUDGED AND DECREED That the mandatory injunction prayed for be and the same is hereby denied and the bill of complaint dismissed at the cost of plaintiff."

The natural flow of water complained of originated in the Betton Hill area and by natural drainage flowed into the ditch paralleling the Betton Hill Road, thence through the culvert at the intersection thereof with the Centerville Road, thence on the Hodges property onto the lands of the plaintiff. It is contended that ditches should parallel the Centerville Road and the culvert dispensed with so the water would not reach plaintiff's property. Defendants contend that a ditch across the plaintiff's land and the removal of obstructions would prevent the overflow on plaintiff's property. The natural course of the flow of the water from the intersection of the two roads is over the Hodges property onto the plaintiff's and thence into a pond in the vicinity thereof.

The law of the case at bar is well settled. See Edason v. Denison, 142 Fla. 101, 194 So. 342; Dade County v. South Dade Farms, Inc., 133 Fla. 288, 182 So. 858; Seaboard All-Florida Ry. Co. v. Underhill, 105 Fla.

409, 141 So. 306; Brown v. Solary, 37 Fla. 102, 19 So. 161; Schofield v. Cooper, 126 Iowa 261, 102 N. W. 110; Melin v. Richman, 96 Conn. 686, 115 Atl. 426; 27 R. C., pages 1139-1154, par. 71-80; 67 Corpus Juris, 862-871, par. 286-295.

Some three or four questions propounded by counsel for the appellant are to the general legal effect that when surface water for a period of several years flows along the ditches parallel to a public road, there is created thereby a prescriptive right for a continued flow thereof and an interference therewith affects vested rights. The following cases are cited to sustain this view; Freeman v. Weeks, 45 Mich. 335, 7 N. W. 904; Reading v. Althouse, 93 Pa. 400; Weatherby v. Micklejohn, 56 Ia. 73, 13 N. W. 697; Meir v. Kroft, (Ia.) 80 N. W. 521. These cases have been examined and, like our Florida cases, hold or recognize the well established principle of law applicable to the nautral flow of surface water, with but a single exception which is not in point.

It is further contended that there is nothing in the record to sustain the view that the surface water here involved followed its natural course when passing through the culvert at the intersection of the Centerville and Betton Hill Roads near the Hodges land thence to the property of the appellant and thence into a pond. The law sustains the natural flow of surface water. The chancellor below no doubt was influenced in his findings of fact by the testimony of Mr. Moore, a witness for the appellant, viz.:

"Q. Mr. Moore, you have testified that you know where the Betton Hill Road intersects. Isn't there a slope from Betton Hill Subdivision down toward the

south side of the Betton Hill Road? In other words it slopes north does it not?

"A. There appears to be a slight draw in the area in there that slopes in a general direction of that south culvert. In other words those waters in Betton Hill Subdivision come around that curve there, then forms that terrace around there, and the water runs from Betton Hill Road and from the South end of the Betton Hill Subdivision down in that culvert and concentrates to that south culvert.

"Q. In other words the natural contours of Betton Hill are directed into that south culvert?

"A. The natural contour would be of that area south of the Betton Hill Road would be practically east, that is the natural drain.

"Q. In other words, it would drain east, and that is towards the Hodges property?

"A. It would eventually.

"Q. Mr. Moore, this natural depression on the Hodges property runs roughly parallel to the Centerville Road does it not?

"A. Being somewhat of a curve there in the Centerville Road, I could not say whether it would or not. It heads out from that intersection in practically an easterly direction, but I think it diverts to the north.

"Q. Mr. Moore, summarizing, if the Centerville Road was not there, the probabilities are the water from Betton Hill Subdivision would find its way into that watercourse on the Hodges property, and would find its way into this depression south of Mr. Willis' land, would it not?

"A. It would find its way eventually if there were no road, if there never had been a road constructed it would eventually find its way down to that lower part

of Mr. Willis' property, as far as the depression on Mrs. Hodges property, I couldn't say about it, because I don't know.

"Q. Not being as familiar with the Hodges property as you are with Mr. Willis' property, it is your testimony that if the road was not there that this water from the Betton Hill Subdivision would by percolation and running over the surface eventually run into the low point on Mr. Willis' property, and from there drain on down to the pond?

"A. That part that was not absorbed. . . .

"Q. Mr. Moore, would it not be possible to construct a ditch across Mr. Willis' land, which would begin at the point where the ditch on the Hodges property runs under the fence, and run it across Mr. Willis' land into the ditch on the Martin land, would it be possible to build a ditch there that would completely relieve the flooded condition of the land?

"A. That all depends on what fall you could get in the ditch below his land. The conditions as I see them are that land in there is absorbing water, too, and it's just kind of a continuous drainage. If you could lower that water in that sandy soil in that low bottom you might relieve that condition, but I didn't go far enough down that natural draw down below his place there to know whether or not you could get the proper fall to maintain water level sufficiently low to drain it.

"Q. Mr. Moore, I believe testimony will be offered here to the effect that a sufficient fall could be gotten, so assuming for the purpose of this next question sufficient fall can be gotten, I will ask you whether or not such a ditch constructed across Mr. Willis' land would alleviate any flood condition?

"A. Assuming you have sufficient fall, and you have a ditch of sufficient cross-section to take that water away as it comes down the roadside it would relieve the condition in his low land, no question about that."

We are unable to understand the materiality of State *ex rel.* Harris v. City of Lakeland, 141 Fla. 795, 193 So. 826. The burden of showing error in the record rests on the appellant and a failure on his part to carry this burden impels the conclusion that there is no error in the record and accordingly the decree appealed from is hereby affirmed.

BROWN, C. J., WHITFIELD and BUFORD, J. J., concur.