C. H. STOER v. OCALA MANUFACTURING, ICE & PACKING COMPANY, a corporation, GEORGE H. ERCK and wife GEORGENA ERCK, CLARE E. FLETCHER and husband, WILLIAM FLETCHER.

24 So. (2nd) 579
January 29, 1946

January Term, 1946
Special Division A

*P. C. Gorman, Gorman & Hamlin* for appellants.

*L. W. Duval* for Ocala Manufacturing, Ice & Packing Company; *H. C. Collins* and *T. M. Sellar* for H. Erck, Georgena Erck, Clare E. Fletcher and William Fletcher, appellees.

TERRELL, J.:

Appellant as complainant filed his bill of complaint in the circuit court alleging that he owned certain lands lying East of Ocklawaha Diversion Canal and North of lands owned by defendants. All of said lands lie in the Ocklawaha Valley, are in a high state of cultivation, and drain from South to North. The bill also alleges that defendants have constructed wells, dams, culverts, ditches or canals, gate valves, and have placed dikes across the canals whereby they impound large quantities of water on their lands, stop the normal flow of the river at times and at other times discharge large quantities of water in the canals and the river beds, and by the time it reaches the lands of complainant it overflows and floods his crops.

The bill prays that defendants be enjoined, (1) From withdrawing great quantities of water from the diversion canal and discharging it so as to overtax the natural water course, causing plaintiff's lands to be inundated, (2) Impounding water by means of dams and dikes and releasing same in large quantities, overtaxing the Ocklawaha river bed, causing plaintiff's lands to overflow, (3) Diverting waters from their natural course, flooding the lands of the plaintiff rendering them unfit for agricultural purposes, (4) Pumping water from wells constructed by defendants, storing it in the canals on their lands and later discharging it in great quantities thereby overtaxing the natural water course, causing plaintiff's lands to overflow, (5) obstructing the natural course of the Ocklawaha river by impounding its waters and then releasing them so as to injure complainant.

All of the defendants filed answers in which they denied the main allegations of the bill of complaint and also denied that by means of the instrumentalities therein named they caused great and unnatural quantities of water to be collected and discharged on the lands of complainant, rendering them unfit for agricultural purposes. The answer also contained a counter claim in which it was charged that plaintiff caused the damage to his land by constructing fences, low bridges and foot logs over the river bed, causing hyacinths and drift

to collect and retard the flow of the water and carrying capacity of the river bed.

The bill, the answer, the counter claim and the answer to the counter claim presented the direct issue of whether the instrumentalities constructed by defendants or the negligence of the plaintiff in keeping the river bed through his lands open was responsible for the overflow and the inundation of his lands. On final hearing after evidence taken by the chancellor, he resolved this issue in favor of defendants and dismissed the bill of complaint. This appeal is from the final decree so entered.

Appellant rely for reversal on the well settled principal that defendants being the upper proprieties and complainant being the lower proprietor of lands on a natural water course, defendants will not by a system of dams, pumps, drains, wells and pipes be permitted to collect and impound large quantities of water on their lands and discharge it into the natural water course in such manner as to over tax it and inundate the lands of the lower proprietor.

He relies on Brumley v. Dorner, 78 Fla. 495, 83 So. 912, Payne v. Ivey, 83 Fla. 436, 93 So. 143, Arundel Corporation v. Griffin, 89 Fla. 128, 103 So. 422 and Dade County v. South Dade Farms, Inc., 133 Fla. 288, 182 So. 858, and like cases to support his contention. These cases unequivocally support the well settled rule in this country that any proprietor may drain surface waters from his lands into a natural water course provided he does not divert the natural flow of the water or overtax the water course to the injury of lower proprietors.

The trouble with appellants position here is that he does not bring himself within this rule. The lands of plaintiff and defendants were in a cooperative drainage area where each owner had to keep the natural water ways and canals or drains leading to them open, else the whole scheme would go to pot, and one of the best agricultural areas in the country be rendered useless.

The chancellor found on the evidence that plaintiff's lands overflowed by reason of his negligence in keeping the natural water courses and canals leading to them open rather than by

being overtaxed from waters poured into them by defendants. We find the evidence ample to support the decree of the chancellor.

Since drainage is the first prerequisite to keeping the lands-suitable for agricultural purposes and every owner is required to keep the natural and other drains through his lands open as his part of the cooperative project to reverse the chancellor and grant the relief prayed for would be equivalent to requiring appellees to bear appellant's part of the drainage burden or abandon their own and render the whole project worthless. This would be tantamount to tossing the baby out with the bath water.

Affirmed.

CHAPMAN, C. J., BUFORD and SEBRING, JJ., concur.