Action by Edythe E. Bray, and husband, against City of Winter Garden, to enjoin defendant city from allowing surface waters to be cast upon plaintiffs' land, and for damages. From an adverse judgment, plaintiffs appeal.
Affirmed.
The appellants sought to enjoin the City of Winter Garden from allowing the surface waters within its limits to be cast upon their lands and to collect for the damage they had suffered.
As a basis for this relief they alleged that the municipality maintained a system of sewers, culverts, ditches, and canals for the collection and disposal of surface waters, and they charged that the city not only permitted water to accumulate in such quantity that when discharged it inundated their lands, but also that it let individuals and corporations use the conduits for the discharge of industrial waste.
From the issue joined by the answer the question arose whether under the facts in the case the lower property, which was planted in citrus trees, and from time to time in garden crops, was rendered useless because the city (1) unlawfully overtaxed the natural watercourse and (2) allowed the waters to become contaminated by the discharge of industrial waste.
In the case of Callan v. G.M. Cypher Co., 71 Fla. 14, 70 So. 841, a similar controversy was considered, and the court decided that an upper tenant committed no wrong when he constructed a ditch to draw the water from his property and empty it into a natural drain, but the court was careful to point out that the water had not been diverted from the natural flow and that the drain had not been taxed beyond its capacity.
In a subsequent case, Brumley v. Dorner, 78 Fla. 495, 83 So. 912, the court, after discussing the distinction between the civil and common law rules with reference to relative rights of lower and upper owners, recognized the rule that surface waters may not be collected and diverted from their natural course so that they will be cast upon the lands of another to his injury. See Dade County v. South Dade Farms, 133 Fla. 288, 182 So. 858.
In the opinion in Stoer v. Ocala Mfg., Ice Packing Co.,157 Fla. 4, 24 So.2d 579, this court referred to certain other decisions as supporting the rule that any proprietor might drain his surface waters into a natural watercourse, provided he did not divert the natural flow or overtax the stream to the injury of lower proprietors. The court then announced that the rule did not apply because it had been found from the evidence that the overflow was caused by plaintiff's neglect to keep the course open rather than from any overtaxing of its capacity.
A like situation came to the attention of the court in Edason v. Denison, 142 Fla. 101, 194 So. 342. The plaintiff, a lower owner, had filed a bill charging that a natural watercourse originated on the land of one defendant and ran through that of another before it reached the property of plaintiff. The drain, it was said, was sufficient in its natural state to serve all three proprietors, but the defendants had caused it to be deepened so that unusual quantities of water flowed into the ditch and at times inundated the land of plaintiff, not only injuring the plaintiff's crops but washing away his soil. The bill of complaint *Page 461 
was dismissed by the lower court, and this action was affirmed here, this court holding that the defendants had a right to deepen the ditch to provide drainage for their land. As a basis for the ruling, the court quoted from a decision of the Supreme Court of California, San Gabriel Valley Country Club v. Los Angeles County, 182 Cal. 392, 188 P. 554, 559, 9 A.L.R. 1200:
"`Summing up the discussion, our conclusion, as we have stated, is that an improvement for the purposes of the drainage and protection of lands above does not give a lower riparian owner on the stream a cause of action merely because such improvement increases the volume of water in the stream as it comes to his land, even though the burden he is necessarily under of protecting his land against the stream is thereby increased and his land is injured because of his failure to meet such increased burden, and further that the rule is not subject to thelimitation that the increased volume must not be such as to makethe stream exceed the capacity of its channel.'"
This quotation appears in the order of the chancellor entered in the instant case as authority for his conclusion, and the last clause we have underscored was italicized by him also.
From a casual examination of the decisions in Edason v. Denison and Stoer v. Ocala Mfg., Ice Packing Co., supra, it might appear that they are not completely in harmony; however, a close study of the former case dispels any such idea, for in the quotation adopted from the California decision it was said that a lower owner does not have a cause of action simply because the flow of water past his land has been increased, even though his burden thus becomes heavier and it was indicated that injury resulted because he failed to meet that burden. This rule was not subject to the limitation that the capacity of the stream must not be exceeded. In the Stoer case, to repeat, it had been said that the overflow was traceable to the lower owner's failure to keep the stream open. So it seems that there is a responsibility on the part of the lower owner to keep the watercourse along his property free of obstructions which would impede or retard the flow of the water and that he may not neglect this duty and claim that he is entitled to compensation for damages because the drain could not carry away the water of the upper proprietor as well as his own. Certainly the capacity of a stream could not be fixed at the amount of water it would accommodate while so obstructed.
The very purpose of controlling water of the dominant tenant is to concentrate it and cause the land to be drained quickly, and as a natural result the flow of water will from time to time and for certain periods become greater. Although a dominant proprietor would not be allowed to cause a flood by the accumulation of water not originating on his property and would not be permitted to dam water there and discharge it in damaging quantities upon the lower owner, it does not seem unjust that he should be allowed to improve the drainage on his property by collecting the waters naturally falling on it and discharging them into the common stream, although the volume of water which accumulated might fluctuate from time to time according to the vagaries of the weather.
Invoking the rule in the Edason case, and especially that part of it which he underscored, the chancellor, in effect, decided that the appellee was not chargeable with any overflow which had resulted from its drainage system in view of all the circumstances — that is, lack of diversion by the city itself, seasonal use by such plants as were located within the city, failure of the lower owners, the appellants, to keep the stream through their property clear of debris. He concluded that there has been no unreasonable use of the watercourse, hence no damage for which the appellee could be held accountable. See State of North Dakota v. State of Minnesota, 263 U.S. 365, 44 S.Ct. 138, 68 L.Ed. 342.
From our examination of the pertinent authorities on the points involved, and particularly the case on which the chancellor primarily relied, we are convinced that he followed the proper rule in determining this controversy. *Page 462 
There is abundant testimony to prove that the overflow resulted from the failure of the appellants to protect their property by keeping the watercourse open, a burden which, as we have seen from the authorities, they should have met. There is conflicting testimony as to the extent of any pollution from plants located within the municipal limits using the sewerage system. Patently, the chancellor chose to believe the evidence which supported the position of the appellee, and in this he was thoroughly justified. Doubtless any pollution that may have appeared in the water of the channel would not have reached the property of the appellants had it not been for the overflow from the obstructions which they had not removed.
No distinction is made in this case because of the fact that the dominant proprietor is a municipality. When it undertook to maintain a drainage system it acted in a corporate capacity and would, if in the wrong, be held to the same accountability as an individual, McQuillin — Municipal Corporations, Second Edition, Section 1559; also the city in the performance of this ministerial function would not be excused from responsibility for pollution on the ground that the pollution was actually caused by persons or corporations to whom the city made the drainage system accessible. McQuillin — Municipal Corporations, Second Edition, *page 413. 
Two factors in this case serve to demonstrate the soundness of the rule that the findings by a chancellor of facts developed by testimony taken before him should not be disturbed in the absence of a showing that he clearly erred. Before any testimony whatever was taken he, accompanied by counsel for the parties, viewed the properties in question, gaining information which was of tremendous value to him in interpreting the testimony of the witnesses. This was an opportunity which is denied us, and there is no way that we can, from the transcript, visualize accurately what he actually saw.
From the very nature of the case it was necessary for the witnesses to testify about the topography of the entire area and to refer repeatedly to plats of it. The record is replete with answers containing the adverbs "here" and "there", the pronouns "this" and "that," and the expressions "this way" and "that way," and usually containing the notation by the reporter: "(indicating)." All of us have seen the precise procedure followed in the trial of a case, and we do not question that answers given in this manner by a witness as he passes an index finger over a map are perfectly understood by the judge and the attorneys, but the fact remains that when they are recorded and sent to us in type, such answers are utterly unintelligible.
Approving the rule of law followed by the chancellor and indulging the presumption that he correctly construed the testimony, we reiterate that any damage suffered by the appellant from the overflow was not proved to be the fault of appellee.
Affirmed.
ADAMS, C.J., and TERRELL and BARNS, JJ., concur.