415 So.2d 1286 (1982)
SEMINOLE COUNTY, Appellant/Cross-Appellee,
v.
Harold E. MERTZ and Esther M. Mertz, His Wife; the Huskey Company, a Florida Corporation; and Magnolia Service Corporation, a Florida Corporation, Appellees/Cross-Appellants.
No. 81-1115.
District Court of Appeal of Florida, Fifth District.
May 26, 1982.
Rehearing Denied July 2, 1982.
*1287 Clifton A. McClelland, Jr., of Nabors, Potter, McClelland, Griffith & Jones, P.A., Melbourne, and Nikki Clayton, Seminole County Atty., Sanford, for appellant/cross-appellee.
Harlan Tuck of Giles, Hedrick & Robinson, P.A., Orlando, for appellee/cross-appellant Magnolia Service Corp.
Michael J. Sheahan of Maguire, Voorhis & Wells, P.A., Winter Park, for appellee/cross-appellant The Huskey Co.
Emery H. Rosenbluth, Jr., of Subin, Shams, Rosenbluth & Moran, P.A., Orlando, for appellees/cross-appellants Harold E. Mertz and Esther M. Mertz.
COBB, Judge.
Seminole County and Magnolia Service Corporation[1] appeal the granting of a permanent injunction prohibiting the flow of surface water onto appellees' lands. We affirm. For reasons that will be discussed, Magnolia's appeal of the dismissal of its counterclaim is denied.
Harold and Esther Mertz (Mertz), appellees herein, filed a complaint in March, *1288 1978, in the Circuit Court of the Eighteenth Judicial Circuit seeking equitable relief and damages against Magnolia Service Corporation (Magnolia) and equitable relief against the Huskey Company (Huskey). Mertz also sought equitable relief from Seminole County (County), which was subsequently added to the complaint.
Mertz's claim for injunctive relief, which is the focus of this appeal, requested that Magnolia, Huskey and County be prohibited from causing further damage to Mertz's property by the flow of surface waters from the residential subdivision upland from the property which Magnolia and Huskey had developed.
A temporary injunction was issued on April 24, 1979, ordering Magnolia to insure that no further damage came from its drainage onto the Mertz property. This temporary injunction was dissolved on July 19, 1979, the trial judge finding that the equities no longer called for such an injunction, particularly since the Mertzes had failed to allow repair of the problem.
Trial was begun by a different circuit judge on August 4, 1980, and continued for eleven days. The court entered its final judgment allowing the injunctive relief sought by Mertz on June 11, 1981. A motion for rehearing was denied on August 4, 1981, and this appeal followed.
This case stems from the development of two adjoining parcels of land in Seminole County. Magnolia is the developer of a planned unit development (PUD) known as Wekiva Hunt Club (Wekiva); Huskey is the developer of Sweetwater Properties, encompassing considerable acreage in Orange and Seminole Counties. This land, which is considered a development of regional impact, is adjacent to Wekiva and to the east and north of Mertz's land.
At the time of trial, there were approximately 1,078 dwelling units in Wekiva, with a plan for 2,928. In addition, some of the streets had been completed, several sections had been platted, and streets and storm drains constructed.
Of the total 1,022 acres, this lawsuit concerned about 200 to 245 acres that form a triangular shaped basin, which contained approximately 109 dwelling units at the time of trial, with plans for an additional 500 in the future. It is the drainage from this basin that is the focus of this action.
The Mertz property was located immediately north and downhill from this basin. Mertz had planned a single-family residence for the land, which he thought contained two lakes, but which in reality were four sinkholes, a fact Mertz discovered as the dry season progressed. Mertz remedied the situation by lining the sinkholes with vinyl, with provisions for percolation into soil when the water rose over a certain level.
Magnolia proceeded with their development, including the building of a retarding dam with an 18-inch and a 36-inch pipe to allow the water to go through, as well as a spillway for heavy rains. Additionally, a 24-inch metal pipe carried water from a marshy area on Magnolia's property into a small pond on the southeast of Mertz's property. During construction of the dam, the concrete pipe was placed approximately ten feet east of where the metal pipe had been, so the stream of water now first flows on the Huskey property rather than directly into Mertz's pond. This water now flows in a new man-made channel just east of the Mertz property and intersects the flow from the 36-inch pipe in the eastern part of the dam, with both entering the Mertz property approximately 115 feet north of its southeast corner, flowing eventually into Mertz's vinyl lined lake across a portion of land which was also vinyl lined to cause a "babbling brook" effect.
The event which instigated this suit occurred on March 8, 1978, when a temporary dam, somewhat to the south of the permanent one being built, discharged a large amount of water through an 18-inch concrete pipe, filling the Mertz pond with sand and sediment and causing dirt and debris to flow onto the Mertz land, turning a crystalclear lake into a sandy one, with erosion damage and destruction continuing through the trial.
*1289 Following eleven days of trial, with considerable expert testimony and the taking of a view by the court, the court entered its final judgment. The court found that the 200-acre area in question was in the form of two basins. Prior to development, the western basin consisting of about three-eighths of the area, drained without going through the marshy area on the east, but rather flowed directly northward onto the western portion of the Mertz land and then into what is now the Mertz lake. The court stated that the development has caused diversion of substantially all of the water from the western basin into the marshy area in the eastern basin. The court found that the western basin had no features that could conceivably be classified as a natural watercourse, and found that the flow instead was in the form of surface sheet flow.
In the eastern basin, the court found that there were no natural flows, and only two short channel areas of approximately 150 yards each, neither of which in the court's opinion was seen as a watercourse. The court did state during the motion for rehearing that the small flow on the golf course may be a watercourse, but in the court's opinion it did not make any difference to the total outcome of the case.
The court found two substantial divisions of water: that from the western basin to the eastern basin, and one in the shift of the western outlet of the marsh by the placing of the concrete pipe some ten feet east of where it had been, having a substantial effect on Mertz's property by causing a channel to be eroded where none had existed previously. The court found these two diversions to have violated the water laws of Florida, entitling Mertz to equitable relief. The solution to the problem, in the court's opinion, especially since further development would only increase the flow, was to have Magnolia use its 75-foot wide drainage easement it had previously acquired from Huskey and that ran along the eastern side of the Mertz property and along its northern border, to divert all the water flow now going onto the Mertz property. The court noted that while some water would flow in nature, allowing only that flow would require the digging of storm sewers and the obtaining of drainage easements from owners within the western basin.
The court ordered that Magnolia, Huskey and Seminole be enjoined from permitting the flow of surface waters onto the Mertz property and ordered them to construct a channel on the easements skirting the property to drain all such water. This order was modified on August 4, 1981, to include only those waters collected behind the defendant's dam and which either passed through the dam or in times of extreme rainfall would flow over such dam.
Appellants claim that the trial court misapplied Florida water law in allowing the injunction. Courts of Florida have applied, in an almost unbroken line of decisions, practically all the elements of the modified civil law rule of surface water. F. Maloney, S. Plager, R. Ausness, B. Canter, Florida Water Law 617 (1980) [hereinafter cited as Maloney & Plager]. The general rule today is that the upper owner may improve and enhance the natural drainage of his land as long as he acts reasonably and does not divert the flow, and that the lower owner is subject to an easement for such flow as the upper owner is allowed to cast upon him. Maloney & Plager at 592.
In the leading case of Brumley v. Dorner, 78 Fla. 495, 83 So. 912 (1919), the court stated the civil law rule that no person has the right to gather surface waters that would naturally flow in one direction and divert them from their natural course and cast them upon lands of the lower owner to his injury. The court saw the case of a diversion as one stronger than that of merely increased accumulation of water in the same flow. 83 So. at 914.
That is the situation in the instant case. The trial court found two substantial diversions of diffused surface water from their natural flow which caused damage to the lower owner (Mertz). While the law is different where a natural watercourse is present, allowing for the quantity of surface water to greatly increase, even to the *1290 detriment of the subservient landowner, Edason v. Denison, 142 Fla. 101, 194 So. 342 (1940), that is not the case here. The judge specifically found that no watercourse existed; rather it was only diffused surface water. Even if the water were in a natural watercourse, that would only allow for an increased flow, and the diversion still would be impermissible. New Homes of Pensacola v. Mayne, 169 So.2d 345 (Fla. 1st DCA 1964); Stoer v. Ocala Mfg., Ice & Packing Co., 157 Fla. 4, 24 So.2d 579 (1946).
The question of whether a water flow is diffused surface water or a natural watercourse is one of fact. Libby, McNeil & Libby v. Roberts, 110 So.2d 82 (Fla. 2d DCA 1959). Such findings of a trial judge should not be disturbed in the absence of a showing that the trial court clearly erred. It is extremely difficult for the appellate court to visualize what the trial court saw and heard at trial and in actually viewing the site; therefore, his findings should be given great weight. Bray v. City of Winter Garden, 40 So.2d 459 (Fla. 1949). The trial judge here clearly saw improper diversion as the key to this case, and correctly applied prevailing Florida water law.
Appellants' second point on appeal is that the trial court erred by excluding evidence of Huskey's commitments it entered into when it filed an application as a development of regional impact. The county alleges that these commitments were binding on Mertz as a subsequent buyer of the Huskey property, and that they were proper to be admitted and used by the county as an affirmative defense to show that Mertz's non-compliance with pledges to use the area as a flood storage area contributed to his damages. The trial court found that Mertz did not fall under the definition of a developer under the statute, and therefore the evidence was found to be inadmissible as irrelevant. We agree with the trial court's findings that the evidence was properly excluded.
Section 380.031(4), Florida Statutes (1981), defines "developer" as "any person, including a governmental agency, undertaking any development as defined in this chapter." "Development" is defined in section 380.04 as including the dividing of land into three or more parcels.[2] The statute then continues to define certain examples of what development entails, as well as what is not included in development. Many of the examples of what constitutes development, such as the clearing of land as an adjunct of construction, would seem to make many fall under the development definition who do not belong there. Therefore, a better reading and the one adopted by the trial court is that the requirement of a division of three or more is fundamental to the finding of a development. Since Mertz has only built a single-family dwelling, on one parcel, the statute does not apply and the DRI commitments are inapplicable.
Appellant contends that Mertz nevertheless should be bound by the prior commitments of Huskey, and relies upon General Electric Credit Corp. of Georgia v. Metropolitan Dade County, 346 So.2d 1049 (Fla. 3d DCA 1977), to support its position. General Electric can be distinguished from the instant case. In that case, General Electric took over on a foreclosure from a prior holder who had filed a DRI commitment, and was seeking to develop the same large development as the predecessor was. Allowing for a successor in that case to avoid the statute would vitiate its effectiveness. The situation here is far different, where instead of a multiple-plan development, only a single-family dwelling is planned on one parcel, thereby removing any fears of a vitiation of the statute. Indeed, the developer in General Electric clearly met the three or more parcel rule in the statute, while here, Mertz clearly does not. The trial judge therefore acted properly in excluding the evidence as irrelevant.
Appellant Seminole County claims that the planning and disbursement of water *1291 flow is a discretionary act of government and that the county is therefore immune from tort liability on that basis. Mertz has made no claim against the county in tort; rather, they have merely joined the county in the action as follows:
Seminole County is a political subdivision of the State of Florida. Seminole County is or may be the owner of streets, rights-of-way, and drainage easements which may drain water into the area described in Paragraph 4, also known as Wekiva Hunt Club, and further holds the easements within the water storage area described in Paragraph 7, and as such, is a necessary party to this action for injunctive relief as it may be affected by or have an interest in any court action in that regard.
At no time was any action in tort taken against the city; rather, it was only one for injunctive relief against the continuing flow of water from the street drains onto the Mertz property.
Injunctions for water damage may be invoked against governmental bodies. Lawrence v. Eastern Airlines, Inc., 81 So.2d 632 (Fla. 1955); Brumley v. Dorner, 78 Fla. 495, 83 So. 912 (1919); Dept. of Transp. v. Burnette, 384 So.2d 916 (Fla. 1st DCA 1980). Therefore, sovereign immunity is not applicable here as against the county.
Appellant Magnolia contends that the trial court erred in dismissing its counterclaim against Mertz for tortious interference with the business relationship between Huskey and Magnolia.
Piecemeal appeals are not to be permitted where the claims are legally interrelated and their substance involve the same transaction; however, when it is obvious that a separate and distinct cause of action is pleaded which is not interdependent with other pleaded claims they should be appealable if dismissed with finality at the trial level and not delayed of appeal because of the pendency of other claims between the parties. Mendez v. West Flagler Family Ass'n., Inc., 303 So.2d 1 (Fla. 1974). A dismissal of a counterclaim could constitute a final appealable order if in fact by dismissal of the counterclaim the trial judge adjudicates a distinct and severable cause of action. S.L.T. Warehouse Co. v. Webb, 304 So.2d 97 (Fla. 1974).
In the instant case, the counterclaim was dismissed without leave to amend by the court. The counterclaim dealt only with the alleged tortious interference with the business relationship of Huskey and Magnolia, and its proof was based upon several letters Mertz's attorney had sent to the county commissioner and others outside the action. This action is clearly distinct from the rest of the case which dealt with the principles of water law and on the layout and drainage of the land. An adjudication of this claim had no effect on the water law suit, as the adjudication of the water law suit would have had no effect on the tort counterclaim. This clearly falls within the Mendez rule, and therefore, the appeal from its dismissal should have been filed by Magnolia following its dismissal, and any appeal now is untimely.
In their final point on appeal, Seminole County and Magnolia claim that the trial judge's final order, which called for the diversion of water around Mertz's property, violated the rule that the court should balance the equities of the parties, and further claim that the order is defectively overbroad. The court found the threat of continuing harm from the water flow. This is a prime requisite of allowing an injunction. Further, the court found that the method of diversion around the land was the easiest and cheapest way to remedy the situation, the court seeing any other alternatives as too drastic. The court stated it had to deal with a single flow coming onto Mertz's land from the land above, and in the court's opinion this limited its options, since to allow for any natural flow would cause harm to the western basin landowners. In the court's opinion, this precluded any alternative that would allow a partial natural flow as urged by appellant. We agree.
While injunctions should not be overly broad, here, the court after hearing many experts and viewing the site, saw no lesser alternative to effectuate its order than the *1292 re-routing around Mertz's land. It is improper for this court not to grant great weight to those findings and conclusions.
Appellant also urges that Mertz did not come into the court with "clean hands," in that his actions in lining the pond and brook caused more harm than he would have suffered otherwise. This argument is without merit. The trial court found that there was no proof of any damage that Mertz had caused, nor of his blatant disregard for advice on how to change the flow of water on his land. Further, in the final judgment, the court made no mention of any harm caused by Mertz, but rather merely mentioned his changes as not having any effect on the previous flow.
The trial court applied the proper law in finding that an unlawful deviation of water flow had occurred. By finding that it would continue in the future, perhaps more drastically, the court was proper in granting the injunctive relief. Furthermore, since this remedy seemed to the trial court the least drastic method to accomplish its goals, it is not fatally overbroad. The judgment below is
AFFIRMED.
SHARP and COWART, JJ., concur.
NOTES
[1] Magnolia is styled as a cross-appellant/appellee for this action. This is due to its improperly filing a notice of cross-appeal rather than a notice of joinder. For purposes of this appeal, it will be considered an appellant.
[2] Section 380.04(1), Florida Statutes (1981), states as follows:

"Development" means the carrying out of any building or mining operation or the making of any material change in the use or appearance of any structure or land and the dividing of land into three or more parcels.